John P. Costello, Esq. (California State Bar No. 161511)
Pamela W. Bertani, Esq. (California State Bar No. 182672)
**COSTELLO LAW CORPORATION**
331 J Street, Suite 200
Sacramento, California 95814
Telephone No.: (916) 441-2234
Fax No: (916) 441-4254

Glenn W. Peterson, Esq. (California State Bar No. 126173)
**MILLSTONE, PETERSON & WATTS, LLP**
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
Telephone: (916) 780-8222
Fax No: (916) 780-8775

*Attorneys for Plaintiff Dustin K. Adler*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| DUSTIN K. ADLER, an individual, | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| vs. | (1) COPYRIGHT INFRINGEMENT; AND<br>(2) FRAUD |
| RELYNET, INC., a California Corporation, MICHAEL DICARLO, an individual, and DOES 1 through 50, inclusively, | |
| Defendants. | JURY TRIAL DEMANDED |

Plaintiff Dustin K. Adler (hereinafter "Plaintiff" or "Adler") by and through counsel, hereby files this Complaint with Jury Demand against Defendants RelyNet, Incorporated (hereinafter "RelyNet" or "Defendant RelyNet"), Michael DiCarlo ("hereinafter "DiCarlo" or "Defendant DiCarlo") and Does 1 through 50, inclusive (collectively "Defendants"), and complains and alleges as follows:

## INTRODUCTION

1. This case is about software piracy in the guise of friendship, which has resulted in Plaintiff Dustin K. Adler being completely stripped of the fruits of his labor and – correspondingly – his copyright protected ZeroForum™ software. Plaintiff is a skilled software programmer *and* an avid automobile enthusiast. The ZeroForum™ software platform embodies both of these attributes: Plaintiff's adept ability for writing computer code and his passion for automotive innovation.

2. ZeroForum™ operates as the software platform that drives www.Honda-Tech.com, which is an Internet website and corresponding message board designed for Honda automobile enthusiasts. Software such as ZeroForum™ is commonly known as "bulletin board" or "message board" software, as the software functions to manage communications and information exchange among website users by allowing such users to "post" and access information via a website's communication infrastructure (i.e., an electronic bulletin board module).

3. Through a series of covert corporate maneuvers beginning in early 2003, Defendants Michael DiCarlo and RelyNet, Inc. commandeered exclusive control of the Honda-Tech.com website and Plaintiff's ZeroForum™ software engine that drives the website. The heart of the impending controversy lies therein.

4. The dispute culminated in 2005 after Plaintiff was *locked-out*, both physically and electronically, of RelyNet, Inc. and the Honda-Tech.com website by long-term "friend" and RelyNet co-owner Defendant Michael DiCarlo. RelyNet is a company that Plaintiff not only co-owned and helped build from the ground up, but a company that continues – to this very day – to operate upon Plaintiff's ZeroForum™ software platform – expressly without Plaintiff's permission or any other cognizable form of authorization.

5. Plaintiff brings this lawsuit upon discovering that after orchestrating and consummating Plaintiff's lock-out, DiCarlo systematically (and demonstrably) misappropriated Plaintiff's ZeroForum™ software and ostensibly sold rights in the software to a California corporation named Internet Brands, Inc. ("Internet Brands") for an undisclosed, but presumably sizable, purchase price.

6. Internet Brands is an Internet holding company that, *inter alia*, operates leading automotive-related enthusiast websites, which are attracting an exponentially growing automotive-enthusiast audience. Such electronic "communities" are gaining popularity in the marketplace, particularly within various discrete areas of focus encompassed by Internet Brands' multiple principle websites.

7. In 2007, Internet Brands reportedly acquired at least 35 companies and websites for a total of approximately $84.8 million. On information and belief, Honda-Tech.com was one of those websites acquired. Indeed, Internet Brands' aggressive acquisition strategy was, reportedly, in response to a perceived deceleration in its consumer Internet segment, and in particular its automotive business. On information and belief, to address this concern, one of Internet Brands' largest 2007 acquisitions was of a company called Jelsoft Enterprises, a "bulletin board" software developer. In a recent Securities and Exchange Commission filing, Internet Brands indicated its plan to continue such acquisitions, and listed among its acquired enthusiast websites Honda-Tech.com, which – to date – remains to be "Powered" by Plaintiff's ZeroForum™ software platform, as expressly indicated on the www.Honda-Tech.com website.

8. Plaintiff Dustin Adler wrote the first and second versions of ZeroForum™, respectively, in early 2000 and 2001, from his home in Folsom, California – during his spare time, as a hobby and unrelated to any form of business affiliation with RelyNet. The ZeroForum™ version currently powering Honda-Tech.com is derived directly from Plaintiff's 2001 version, and contains the vast majority of code from that initial version. Plaintiff has neither assigned nor otherwise transferred his ownership interest in the ZeroForum™ software to Defendants or any other individual or entity. Plaintiff seeks the return of his intellectual property and damages corresponding to Defendants' wrongful misappropriation.

**JURISDICTION AND VENUE**

9. Plaintiff's First Cause of Action arises under the Federal Copyright Act, 17 U.S.C. §§ 101 et seq. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1338.

10. This Court has supplemental subject matter jurisdiction over the pendant state law claims under 28 U.S.C. § 1367, because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11. Venue in this district is appropriate, pursuant to 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(a) in that Defendants reside or may be found in this judicial district and the acts complained of herein occurred in this judicial district.

**PARTIES**

12. Plaintiff Dustin K. Adler is a California resident and at all relevant times resided in Folsom, California.

13. On information and belief, Defendant Michael DiCarlo is a California resident and at all relevant times resided in Rancho Cordova, California.

14. On information and belief, Defendant RelyNet is a California corporation with its principal business offices located in Rancho Cordova, County of Sacramento.

15. The true names and capacities, whether individual, corporate, or otherwise, of the Defendants sued as Does 1 through 50 are unknown to Plaintiff, who therefore sues them by such fictitious names. At such time as their true names and capacities have been ascertained, Plaintiff will seek leave of Court to amend this Complaint accordingly. On information and belief, Plaintiff alleges that each of Does 1 through 50 was an agent, representative or employee of each of the other Defendants and was acting at all times within the scope of his or her agency or representative capacity, with the knowledge and consent of the other Defendants, and that each of Does 1 through 50 are liable to Plaintiff in connection with one or more of the claims sued upon herein and are responsible in some manner for the wrongful acts and conduct alleged herein.

## GENERAL ALLEGATIONS

16. Plaintiff and Defendant Michael DiCarlo have known each other for over twenty years. In 1987, Plaintiff and Defendant were first grade classmates at the Victory Christian School in Fair Oaks, California. From 1995 to 1997 Plaintiff and Defendant attended the Capital Christian School in Sacramento, California during their freshman and sophomore years of high school. Michael DiCarlo was Plaintiff's best man at his wedding in May 2005. The relationship between Plaintiff and Defendant continued to develop over time in large part due to their growing and mutual interest in the hobby of modifying Honda automobiles.

17. In 1998, Defendant DiCarlo formed RelyNet with then business partner Patrick Tiquet. At this time, RelyNet was organized as a general partnership and located in Rancho Cordova, California.

18. In or about March 1999, Tim Roberts became affiliated with DiCarlo and RelyNet. During this period, RelyNet's business activities included offering website hosting on a single server and reselling dial-up Internet accounts from a company known as Inreach Internet. This business model ultimately proved to be unprofitable and eventually DiCarlo purchased all of Tim Roberts' RelyNet shares for a nominal sum. In our about December 1999 RelyNet evolved into a sole proprietorship of Defendant DiCarlo.

19. During 1999 and 2000, Plaintiff worked as a software developer in the information technology (IT) field for various companies unrelated to Defendant RelyNet. In fact, in or about June 1999, Defendant DiCarlo actually assisted Plaintiff in securing Plaintiff's first IT job at an organization then called Sacramento Network Access located in Sacramento, California.

20. In December 1999, Plaintiff secured full-time employment as an IT software developer at a company known as Objective Systems Integrators ("OSI") in Folsom, California.

21. During this time period, and while still working as a full-time OSI employee, Plaintiff continued to ply his Honda car hobby. To this end, in early 2000 Plaintiff discovered that a currently organized Honda Internet bulletin board, then known as Honda-Acura.net, was in the process of losing its website hosting capabilities. Plaintiff viewed this dilemma as a *golden* opportunity to

engage more fully his Honda car hobby, and employ his adept computer programming skills in the process.

22. By way of background, Internet bulletin boards (also known as message boards) provide an electronic forum in which participants share information and dialogue regarding any given topic. The Honda-Acura.net bulletin board community comprised a forum of automobile enthusiasts interested particularly in Honda and Acura vehicles. Website bulletin board forums are "hosted" on one or more "servers", which provide an operational platform for functional bulletin board websites by, *inter alia*, performing services for connected clients (i.e., websites) as part of a client-server architecture. Servers that host bulletin board websites, in turn, operate based upon bulletin board software, which is developed and authored to execute one or more applications, and thereby provide services to clients. For example, such an application may involve accepting client connections in order to service client requests. In the case at bar, RelyNet servers provided its clients (i.e., other websites) with access to Plaintiff's ZeroForum™ software, which functions as an Internet discussion engine to facilitate (or "host") communication for each respective client website.

23. Early on, Plaintiff envisioned his software being utilized in just that manner. Indeed, in Plaintiff's eyes, the fact that Honda-Acura.net was in the process of losing its web host presented a unique and exciting opportunity to continue developing his hobby and honing his programming prowess simultaneously. Simply stated, Plaintiff wanted to participate in hosting the Honda-Acura.net website and running the forum on his favorite topic – Honda vehicles.

24. While still a full-time employee at OSI, in early 2000 Plaintiff approached Defendant DiCarlo to pitch the concept that RelyNet's servers would provide a perfect environment for hosting Honda-Acura.net. At this point, RelyNet was organized as a sole proprietorship of Defendant DiCarlo and was not generating a sustained profit. RelyNet's servers were plainly underutilized due, in large part, to a demonstrable lack of business and were basically sitting dormant and non-functional. Plaintiff ultimately convinced DiCarlo to put a RelyNet server to work as the Honda-Acura.net web host. With Plaintiff and Defendant sharing a strong enthusiast interest in Honda automobiles, DiCarlo agreed with Plaintiff and the web hosting project was underway.

25. Also in early 2000, and while still a full-time OSI employee, Plaintiff wrote the very first version of his ZeroForum™ bulletin board software (Version 1.0). Plaintiff was motivated and inspired by the prospect of participating in the Honda-Acura.net project, and in his spare time wrote ZeroForum™ 1.0 from his home. Thinking prospectively, Plaintiff envisioned ultimately replacing the Ultimate Bulletin Board ("UBB") software program, which was currently running Honda-Acura.net, with his faster, versatile and more secure ZeroForum™ software. Plaintiff has never assigned or otherwise transferred his proprietary rights in ZeroForum™ 1.0 to Defendants or any other individual or entity.

26. Initially, RelyNet hosted the Honda-Acura.net forum free of charge. At this time Chris Johnson, an individual unaffiliated with RelyNet, oversaw the forum as a commercial enterprise but did not contribute financially to RelyNet's hosting efforts.

27. Not long after commencing the Honda-Acura.net project, and to Plaintiff's and Defendant's delight, the Honda-Acura.net forum became increasingly popular and RelyNet needed to add another server to handle the increased website traffic. Plaintiff's and Defendant's "hobby" was beginning to gain traction, but attendant to this success were increasing expenses for maintaining the Honda-Acura.net website.

28. Despite the rising expenses required to operate Honda-Acura.net, Chris Johnson continually refused to contribute financially toward the operation. As a result, in or about March 2000, Plaintiff and Defendant DiCarlo parted ways with Chris Johnson and re-introduced the forum to the world as Honda-Tech.com. Plaintiff originally registered the domain name "Honda-Tech.com" in his own name and paid all domain name registration fees out of his own pocket. Defendant surreptitiously transferred the Honda-Tech.com domain name to RelyNet in or about 2002.

29. In June 2000, and while still a full-time OSI employee, Plaintiff decided that he had optimized his new ZeroForum™ 1.0 software to a point where the software was ready for public use. Plaintiff consequently converted all data on RelyNet servers from the UBB bulletin board software into ZeroForum™ 1.0 using a conversion script program that Plaintiff also exclusively wrote. From

1  this point – to date – the Honda-Tech.com website has been "Powered" by Plaintiff's ZeroForum™
2  software (as indicated to this day on the Honda-Tech.com website).

3  30. In August 2000, unhappy with the work environment at OSI, Plaintiff secured full-
4  time employment at a company known as CampusEngine.com (WorldWideWeb University).
5  During the course of his employment at CampusEngine.com, Plaintiff developed a publishing
6  system called CEPub, which is designed to run all CampusEngine.com websites.

7  31. At this time, Plaintiff and Defendant had not discussed the prospect of any type of
8  partnership or other business relationship that would encompass Plaintiff's intellectual property,
9  including the ZeroForum™ software and corresponding trademark. Plaintiff was simply having fun
10 with his Honda-Tech.com hobby and new ZeroForum™ software, while he worked full-time at
11 CampusEngine.com.

12 32. Correspondingly, during this period Defendant DiCarlo continued to work full-time
13 as an Intel employee. RelyNet was Defendant's side business, which was systemically losing
14 money. At this point in RelyNet's history, the company had secured approximately 10 dial-up
15 Internet accounts for sale and only 5 actual customers – the majority of which were Defendant's
16 family members. Defendant DiCarlo was operating RelyNet from his home.

17 33. In December 2000, CampusEngine.com underwent financial hardship and laid
18 Plaintiff off work. In January 2001, while still unemployed, Plaintiff began independently authoring
19 the second version of his ZeroForum™ software (Version 2.0). ZeroForum™ 2.0 was authored
20 from scratch and did not use any computer code from ZeroForum™ 1.0. Plaintiff created
21 ZeroForum™ 2.0 at his own expense, on his own time, from his own home and using his own
22 computer equipment. Plaintiff has neither assigned nor otherwise transferred his proprietary rights
23 in ZeroForum™ 2.0 to Defendants or any other individual or entity.

24 34. In March 2001, and still working from his home, Plaintiff completed writing and
25 optimizing ZeroForum™ 2.0. In addition, Plaintiff, singlehandedly, designed the ZeroForum.com
26 website and developed all back-end code for executing website operations.

27 35. Also in or about March 2001, Defendant DiCarlo suggested that Plaintiff begin
28 selling his ZeroForum™ 2.0 software from RelyNet servers. It is at this time that Plaintiff and

Defendant formed an informal partnership with respect to Defendant RelyNet. Pursuant to this partnership, both Plaintiff and Defendant claimed 50% ownership in Defendant RelyNet. Defendant DiCarlo's 50% ownership derived primarily from his ownership of the RelyNet servers. Plaintiff's 50% ownership derived primarily from his ownership of the ZeroForum™ software, trademark and related intellectual property; several hundreds of hours of Plaintiff's labor as a skilled software developer is writing the ZeroForum™ code; all expenses Plaintiff incurred in developing, writing and optimizing ZeroForum™; and the labor and expense Plaintiff incurred developing the ZeroForum.com website. In short, Plaintiff's labor and expense in developing the ZeroForum™ software and related intellectual property that powers RelyNet's servers was agreed to represent Plaintiff's capital investment supporting his 50% share of the RelyNet business. At this point, the partnership between Plaintiff and Defendant was based on oral promises and was not memorialized in any written contract.

36. Throughout the year 2001, the number of ZeroForum™ hosted websites began to grow as the design of Plaintiff's ZeroForum™ software gained recognition and respect in the marketplace. For instance, in the Summer of 2001, the owners of a website known as VWVortex.com, a website devoted to Volkswagen enthusiasts, contacted RelyNet to inquire about purchasing ZeroForum™ to run the VWVortex.com website. The VWVortex.com owners had previously seen Honda-Tech.com being "Powered" by ZeroForum™ and were impressed with the ZeroForum™ software capabilities. Consequently, VWVortex.com – and many other websites – purchased an annual license from RelyNet for use of the ZeroForum™ software platform on those corresponding websites. The initial VWVortex.com license fee was $700 annually.

37. Recognizing ZeroForum's™ marketplace desirability, Defendant DiCarlo employed a new business model for RelyNet to maximize profits based on access to Plaintiff's ZeroForum™ software. Thus, after one year of employing ZeroForum™, Defendant DiCarlo informed VWVortex.com, and other customers, that annual licenses were no longer available. Instead, in order to continue utilizing ZeroForum™ those customers were required to engage RelyNet to provide website hosting services, which were based on the ZeroForum™ software platform. VWVortex.com subsequently agreed to pay RelyNet $36,000 per year for web hosting services –

which is *considerably* more than the prior $700 annual license fee and increased profits from the VWVortex transaction by over $35,000. VWVortex.com and other customers saw enough value in the performance of ZeroForum™, as compared to UBB and other bulletin board software options, to justify paying RelyNet's webhosting fee. Using this business model, RelyNet began to turn a sustainable profit.

38. In or about June 2002, Plaintiff, on his own time, using his own equipment, and without input or supervision from anyone, completed updating ZeroForum™ 2.0 to incorporate several programming variations in order to further optimize performance of the ZeroForum™ software platform. The updated version, ZeroForum™ 2.0.5a Siva, was derived directly from – and incorporates substantial amounts of computer code from – Plaintiff's original ZeroForum™ 2.0 software. The ZeroForum™ 2.0.5a Siva software update was subsequently installed on all RelyNet servers. Plaintiff has neither assigned nor otherwise transferred ownership in ZeroForum™ Version 2.0.5a Siva to Defendants or any other individual or entity. (Attached as Exhibit A is a true and correct copy of United States Copyright Registration No. TX 6-210-247 for ZeroForum Version 2.0.5a Siva.)

39. In or about October 2002, RelyNet was incorporated in California. Following incorporation, RelyNet servers continued to operate exclusively upon Plaintiff's updated ZeroForum™ 2.0.5a Siva bulletin board software. Thereafter, Plaintiff repeatedly requested that Defendant DiCarlo issue stock ownership certificates reflecting Plaintiff's 50% ownership in RelyNet, and Defendant DiCarlo continued to assure Plaintiff that he would do so and expressly confirmed – on multiple occasions and in the presence of multiple individuals – Plaintiff's 50% ownership in Defendant RelyNet. Defendant DiCarlo's representations in this regard are demonstrable. In retrospect, they were also fraudulent.

40. As 2002 progressed and the New Year dawned, RelyNet experienced increased profitability, which was due significantly to ZeroForum™ functionality. Correspondingly, Plaintiff continued to develop updated versions of the ZeroForum™ software platform, with each updated version embodying some aspect of improved bulletin board functionality. Like ZeroForum™ 2.0.5a Siva, all subsequent updates were derived directly from, and based exclusively upon, Plaintiff's

original ZeroForum™ 2.0 software suite, which Plaintiff fully developed, exclusively authored and optimized prior to having any business affiliation with Defendants.

41. In or about January 2003, Plaintiff commenced writing yet another updated version of the original ZeroForum™ 2.0 software program. The updated version is entitled ZeroForum™ 2.0.6c and, like ZeroForum™ 2.0.5a Siva and other prior updates, was derived directly from – and contains substantial amounts of computer code from – Plaintiff's original ZeroForum™ 2.0 software. Plaintiff has neither assigned nor otherwise transferred ownership in ZeroForum™ Version 2.0.6c to Defendants or any other individual or entity. (Attached as Exhibit B is a true and correct copy of United States Copyright Registration No. TX 6-210-248 for ZeroForum Version 2.0.6c.)

42. Also in or about January 2003, Plaintiff and Defendant agreed to formalize further their equal ownership in RelyNet. To this end, Plaintiff completed a W-4 form and received from RelyNet a desktop computer in lieu of his first compensation disbursement as a RelyNet co-owner. Throughout the remainder of their business relationship, Plaintiff and Defendant DiCarlo represented themselves as co-owners of Defendant RelyNet. The indicia of co-ownership is demonstrable and includes the following instances of co-owner and compensation parity, which not only denotes co-ownership, but simultaneously reveals DiCarlos' covert attempts to usurp corporate profits :

(a) In 2003, Plaintiff and Defendant DiCarlo agreed to be paid equal monthly compensation amounts as RelyNet co-owners in the amount of $2000 per month;

(b) Plaintiff and DiCarlo agreed that any changes in compensation would be discussed and agreed upon in advance by each co-owner;

(c) In early 2003, RelyNet hired non-owner/employee Layton Wedgeworth, and because RelyNet remained in its growth stage at this time, Plaintiff and Defendant DiCarlo agreed to split their respective salaries to provide Mr. Wedgeworth's salary. Consequently, all three individuals received gross monthly compensation in the amount of $1,250.

(d) On several occasions, Plaintiff and/or Mr. Wedgeworth discovered that DiCarlo had been surreptitiously paying himself a salary from RelyNet corporate funds far in excess of the agreed upon amount for Plaintiff and Defendant as co-owners. Each time Defendant DiCarlo was confronted with this fact, Plaintiff's salary was immediately adjusted to be commensurate with Defendant's DiCarlo's salary – in accord with their status as RelyNet co-owners.

       (i)      For instance, in or about the Fall of 2003, Plaintiff and Mr. Wedgeworth discovered that Defendant DiCarlo had been secretly paying himself a salary significantly exceeding the agreed upon $1,250. Upon being confronted, Defendant DiCarlo agreed that he and Plaintiff would, from that point forward, receive equal monthly salaries of $2,000 in accord with their status as co-owners. Mr. Wedgeworth's monthly employee salary remained at $1,250.

       (ii)     In mid-2004, Plaintiff suspected that Defendant DiCarlo was again misappropriating corporate funds, due in part to Defendant's overt purchases of large ticket items, including an expensive new home. When confronted on this occasion, Defendant DiCarlo literally admitted to paying himself $3,500 per month since late 2003, while Plaintiff's salary remained at the agreed upon $2,000 per month. After being confronted, Plaintiff's and Defendant's monthly salaries were again equalized at $3,500 in accord with their co-ownership status.

       (iii)    In 2005, Plaintiff again suspected that Defendant DiCarlo had significantly pilfered corporate funds for, *inter alia*, personal lifestyle purchases and approached DiCarlo regarding this matter. Consistent with Defendant's prior responses, Plaintiff's monthly compensation rate was immediately increased to achieve parity with Defendant's secret monthly salary of $4,750.

The above examples represent only a portion of the instances in which Defendant DiCarlo overtly and expressly acknowledged Plaintiff's status as a RelyNet co-owner by, among other things, coalescing with a compensation structure indicative of Plaintiff's RelyNet co-ownership. Upon information and belief, Defendant did so with the fraudulent intent to induce plaintiff to continue working for the benefit of Defendant and RelyNet, and to continue developing and updating his software innovations. Plaintiff is also informed and believes that Defendant DiCarlo intentionally deceived Plaintiff into believing that his co-ownership was confirmed so that DiCarlo and RelyNet would continue to financially benefit from a royalty-free license of Plaintiff's copyrighted software innovations, all to Plaintiff's damage and detriment as hereinafter alleged. Had Plaintiff known of DiCarlo's true fraudulent intentions, Plaintiff would have demanded appropriate compensation for RelyNet's use and exploitation of Plaintiff's copyrights, or denied Defendants such privileges altogether.

      43.    In or about July 2003, Plaintiff and Defendant DiCarlo decided to rent an office in Rancho Cordova, California as RelyNet headquarters. This decision was influenced largely by RelyNet's continued revenue and marketplace growth over time, which expanded company operations beyond the space limitations of Plaintiff's and DiCarlo's respective home offices. In or

about September 2003, Defendant DiCarlo resigned from his former employment at Intel and committed to working at RelyNet full-time.

44. In or about Summer 2004, Plaintiff independently developed a software program that he coined Unite™. Plaintiff designed and wrote the Unite™ software as a functionally simplified version of the ZeroForum™ software. Unite™ was derived directly from, and based significantly upon, Plaintiff's original ZeroForum™ 2.0 software. As with the ZeroForum™ software products, Plaintiff has neither assigned nor otherwise transferred his rights in the Unite™ software to Defendants or any other individual or entity.

45. Also in or about Summer 2004, the business relationship between Plaintiff and Defendant began to deteriorate. The first sign of a systemic problem in this regard was Defendant DiCarlo's job performance, which had diminished demonstrably. More specifically, DiCarlo developed a pattern of showing up to work late – or not at all – and working less than full days when he decided to attend work. Despite Plaintiff's repeated verbal admonitions, Defendant DiCarlo continued to spiral into a pattern of unreliable attendance and unfulfilled job responsibilities.

46. By or about early 2005, the business relationship between Plaintiff and Defendant DiCarlo had deteriorated even further. DiCarlo's work performance had faded to about 20 hours per week or less – and virtually *zero* productivity. During this period, DiCarlo would often arrive at RelyNet at 1pm or 2pm in the afternoon and leave for the day a few hours later. At this point, DiCarlo was contributing essentially nothing to RelyNet business operations.

47. Conversely, Plaintiff continued to work diligently – and demonstrably – to continue building RelyNet business operations. Independent of those efforts, in or about May 2005, Plaintiff completed yet another update of the ZeroForum™ software platform. The updated software was entitled ZeroForum™ Version 2.1.2 and, like its predecessors, was derived directly from – and contains substantial amounts of computer code from – Plaintiff's original ZeroForum 2.0 software. Still believing himself to be an equal owner of RelyNet, the ZeroForum™ 2.1.2 software update was loaded onto all RelyNet servers, but Plaintiff has neither assigned nor otherwise transferred ownership in ZeroForum™ Version 2.1.2 to Defendants or any other individual or entity. (Attached

as Exhibit C is a true and correct copy of United States Copyright Registration No. TX 6-210-249 for ZeroForum Version 2.1.2.)

48. On August 1, 2005, and under fraudulent pretenses, Defendant DiCarlo physically and electronically locked Plaintiff completely *out* of RelyNet – and terminated Plaintiff's access to all RelyNet servers. Defendant did this despite having signed a written promise to Plaintiff to issue stock shares totaling 49% of RelyNet's outstanding shares, and despite his manifold verbal promises that Plaintiff was an equal co-owner of RelyNet.

49. Despite Plaintiff's repeated requests, Defendants DiCarlo and RelyNet have absolutely refused to return and discontinue use of Plaintiff's intellectual property, including the ZeroForum™ software products. Plaintiff has been denied access to RelyNet headquarters and servers since August 1, 2005 – and consequently has no way to retrieve his intellectual property and personal belongings left behind.

50. In or about the Fall of 2007, Defendants sold the www.Honda-Tech.com website for an undisclosed amount to Internet Brands, LLC. The Honda-Tech.com website continues to be "Powered by ZeroForum" software, which comprises – literally and demonstrably – Plaintiff's ZeroForum™ software and predecessor source code.

51. Plaintiff has sustained monetary damage as follows: (1) Plaintiff has received *zero* proceeds from the Internet Brands acquisition of Honda-Tech.com and correspondingly Plaintiff's ZeroForum™ software, (2) Plaintiff and has received no compensation for RelyNet's use and exploitation of his copyrights and trademark rights; and (3) Plaintiff has disclosed source code and other intellectual property that he would not have disclosed in the absence of DiCarlo's fraudulent misreprentations as alleged herein, and thus potentially diminished the value of such intellectual properties.

### FIRST CAUSE OF ACTION

**(Copyright Infringement, 17 U.S.C. § 501 et seq., Against All Defendants)**

52. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 51 above as if set forth fully herein.

53. Plaintiff owns a valid and enforceable copyright in all of its ZeroForum™ software, which are Plaintiff's creative works of original authorship.

54. Plaintiff has complied in all respects with the copyright laws and is the exclusive owner of the copyrights to its ZeroForum™ software, including the rights infringed by Defendants. Plaintiff has obtained from the Registrar of Copyrights Certificates of Registration that cover the ZeroForum™ software taken by Defendants and, *inter alia*, subsequently sold to Internet Brands without Plaintiff's authorization. Plaintiff's Certificates are identified, dated and numbered as follows:

| **Title Of Work** | **Date Of Registration** | **Registration Number** |
|---|---|---|
| ZeroForum Version 2.0.5a Siva | September 19, 2005 | TX 6-210-247  (Exhibit A) |
| ZeroForum Version 2.0.6c | September 19, 2005 | TX 6-210-248  (Exhibit B) |
| ZeroForum Version 2.1.2 | September 19, 2005 | TX 6-210-249  (Exhibit C) |

55. The above-referenced registrations cover, but are not limited to, multiple versions of Plaintiff's ZeroForum™ software, including updates, patches and fixes incorporated in each relevant version, all of which Defendants copied without Plaintiff's authorization.

56. Through the acts alleged above, and continuing through today, Defendants have violated Plaintiff's exclusive rights to reproduce and make copies of its copyright protected software by continuing to utilize Plaintiff's ZeroForum™ software on Defendants' computers in violation of 17 U.S.C. § 106.

57. Defendants have also violated, and continue to violate Plaintiff's rights to control distribution, create derivative works and publically display his copyright protected works by, *inter alia*, downloading, copying, creating derivative works from and/or distributing Plaintiff's ZeroForum™ software and derivative works to Defendants' customers, via posting to a website or otherwise in violation of 17 U.S.C. § 106.

58. Defendants were not – and are not – authorized to use, copy, download, reproduce, create derivative works from, distribute, or publicly display Plaintiff's copyright protected

ZeroForum™ software without Plaintiff's express permission. To the extent that Defendants had Plaintiff's express or implied consent prior to August 1, 2005, such consent was obtained by Defendants' fraud and misrepresentations about Plaintiff's co-ownership of RelyNet.

59. In addition to directly infringing Plaintiff's copyrights, Defendants have contributorily and/or vicariously infringed Plaintiff's copyrights in his ZeroForum™ software by controlling, directing, inducing or materially contributing to the unauthorized use, copying, distribution, public display or derivative work creation from Plaintiff's copyright protected ZeroForum™ software. Defendants also obtained a direct financial benefit from the above alleged infringing activities.

60. Defendants knew or should have known that using, copying, distributing, publicly displaying and creating derivative works from Plaintiff's ZeroForum™ software infringed Plaintiff's copyrights in the ZeroForum™ software, and knew or should have known that any permission obtained from Plaintiff prior to August 1, 2005 was procured by Defendants' fraud and misrepresentations about Plaintiff's co-ownership of RelyNet.

61. Plaintiff is entitled to damages in an amount to be proven at trial, including profits attributable to Defendants' infringement not taken into account in computing actual damages under 17 U.S.C. § 504.

62. Defendants' infringement of Plaintiff's copyrights has also caused Plaintiff irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiff's remedy at law is not adequate to compensate him for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by 17 U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

63. Plaintiff has complied in all respects with 17 U.S.C. § 101 et seq., and secured the exclusive rights and privileges in and to the copyrights of the above-referenced works. Plaintiff is the sole proprietor of all rights, title and interest in and to the copyrights in the works as referenced above.

64. Defendant's conduct violates the exclusive rights belonging to Plaintiff as owner of the designated graphic, textual, formatting, editorial and related materials, including without limitation, Plaintiff's rights pursuant to 17 U.S.C. § 106.

65. On information and belief, Plaintiff alleges that, as a direct and proximate result of Defendant's wrongful conduct, Defendants have realized and continues to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

66. Defendant's infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiff in an amount not capable of determination and, unless restrained, will cause further irreparable injury, leaving Plaintiff with no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyrights and ordering Defendant to destroy all products or materials made in violation of Plaintiff's exclusive rights.

67. On information and belief, Defendant has willfully engaged in, and is willfully engaging in, the acts complained of with oppression, fraud and malice, and in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to the maximum statutory damages allowable pursuant to 17 U.S.C. § 504, including enhanced damages.

## SECOND CAUSE OF ACTION

### (Fraud Against Defendant DiCarlo)

68. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 67 above as if set forth fully herein.

69. Defendant DiCarlo made continuing promises and representations to Plaintiff that Plaintiff was a 50% owner of RelyNet, both while it operated as a partnership and after it commenced operating as a corporation in October 2002. The latest of such continuing promises and representations was confirmed by DiCarlo in writing on June 21, 2005. Less than two months thereafter (on August 1, 2005), Plaintiff discovered the falsity of these promises and representations when DiCarlo locked Plaintiff out of RelyNet as alleged above in paragraph 48.

70. At all times between March 2001 and August 1, 2005, DiCarlo concealed his true intentions from Plaintiff; i.e., that he had no intention of transferring 50% ownership of RelyNet to Plaintiff, and that he was merely fraudulently inducing Plaintiff to continue working and impliedly licensing his copyrights for the benefit of DiCarlo and RelyNet. Had Plaintiff known DiCarlo's true intentions, he would never have done so.

71. In making the aforementioned promises and assurances to Plaintiff, and by concealing his true contrary intentions, DiCarlo is liable to Plaintiff for fraud and deceit in one or more of the following ways: (1) He asserted, as a fact, that which is not true, without a reasonable ground for believing it to be true; (2) He suppressed facts from Plaintiff, even though he was bound to disclose them, and/or gave Plaintiff information which was likely to mislead for want of communication of that fact; or, (3) He made one or more promises to Plaintiff, without any intention of performing them.

72. To the extent that Plaintiff relied upon misrepresentations from DiCarlo, Plaintiff's reliance was reasonable under the circumstances.

73. As a direct and proximate result of Defendant DiCarlo's acts, Plaintiff has suffered injury, damages, loss, and harm, including, but not limited to, loss of profits from sales to current and potential ZeroForum™ customers and loss of revenues associated with RelyNet's exploitation of Plaintiff's intellectual property. Defendants' commission of these wrongful acts was willful, malicious, oppressive, and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to an award of punitive damages to punish Defendants' wrongful conduct and deter future wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, it is respectfully requested that this Court enter a judgment in favor of Plaintiff Dustin K. Adler as follows:

A. That the Court issue a judicial determination and declaration that United States Copyright Registration Nos. TX-2-210-247. TX-2-210-248 and TX-2-210-249 are valid and enforceable;

1        B.      That the Court enter judgment that Defendants' unauthorized conduct violates Plaintiff's rights under the Federal Copyright Act;

       C.      That the Court enter judgment that Defendants' infringement is willful;

       D.      That the Court issue an order preliminarily and permanently enjoining Defendants and all entities and individuals acting in concert with Defendants from copying or otherwise using any of Plaintiff's copyright protected materials without Plaintiff's consent or otherwise infringing Plaintiff's copyrights or other rights in any manner;

       E.      That the Court enter judgment ordering Defendants to account to Plaintiff for all gains, profits and advantages derived by Defendants from their infringement of Plaintiff's copyrights or awarding such damages as are proper, and because Defendants intentionally infringed Plaintiff's copyrights, awarding the maximum allowable statutory damages for each violation;

       F.      That the Court enter judgment awarding Plaintiff actual and/or statutory damages for Defendants' copyright infringement in an amount to be determined at trial;

       G.      That the Court enter judgment awarding Plaintiff its costs, reasonable attorney's fees and disbursements in this action, pursuant to 17 U.S.C. § 505;

       H.      That the Court award money damages, in excess of the jurisdictional minimum of this Court, according to later proof, sufficient to compensate plaintiff for all harm and detriment he has suffered by virtue of DiCarlo's fraud; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

I. That the Court enter judgment awarding Plaintiff such other and further relief as is just and proper.

**PLAINTIFF DEMANDS A JURY ON ALL CAUSES SO TRIABLE.**

Respectfully submitted,

DATED: June 12, 2008         **MILLSTONE, PETERSON & WATTS, LLP**

By:  /s/ Glenn W. Peterson
          GLENN W. PETERSON

DATED: June 12, 2008         **COSTELLO LAW CORPORATION**

By:  /s/ PAMELA W. BERTANI
          PAMELA W. BERTANI

Attorneys for Plaintiff Dustin Adler

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

**MILLSTONE PETERSON & WATTS, LLP**
*Attorneys at Law*
/s/ Glenn W. Peterson

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

**COSTELLO LAW CORPORATION**
*Attorneys at Law*
/s/ Pamela W. Bertani

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND FRAUD