IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

---oOo---

DUSTIN K. ADLER,

       Plaintiff,

vs.                                  No. Civ. S-08-1333

RELYNET, INC., et al.,

       Defendants.
_____/

AND RELATED ACTIONS.     /

---oOo---

REPORTER'S TRANSCRIPT

COURT'S RULINGS

WEDNESDAY, NOVEMBER 18, 2009

---oOo---

Reported by:      KELLY O'HALLORAN, CSR #6660

APPEARANCES

For the Plaintiff:

    MILLSTONE PETERSON & WATTS, LLP
    2267 Lava Ridge Court, Suite 210
    Roseville, CA  95661
    BY:  GLENN W. PETERSON

    LAW OFFICES OF JOHN P. COSTELLO
    331 J Street, Suite 200
    Sacramento, CA  95814
    BY:  JOHN P. COSTELLO
        PAMELA W. BERTANI

For the Defendant DiCarlo and RelyNet:

    DAVIS & LEONARD, LLP
    888 Cal Center Drive, Suite 180
    Sacramento, CA  95826
    BY:  STEPHEN L. DAVIS

For the Defendant Internet Brands:

    INTERNET BRANDS, INC.
    LEGAL DEPARTMENT
    909 N. Sepulveda Boulevard, 11th Floor
    El Segundo, CA  90245
    BY:  WENDY E. GILBERTI

For the Defendant Intermedia Outdoors, Inc.:

    DICKINSON WRIGHT
    500 Woodward Avenue, Suite 4000
    Detroit, MI  48226
    BY:  MICHELLE R. HEIKKA

1                    SACRAMENTO, CALIFORNIA

2                  WEDNESDAY, NOVEMBER 18, 2009

3                           ---oOo---

4          (Excerpt of proceedings.)

5          THE COURT:  Okay.  I'm prepared to issue the following

6   rulings.  I want to start with Intermedia's motion for

7   summary judgment.  There are a number of arguments raised by

8   Intermedia in the motion for summary judgment, including as

9   follows:

10         That the plaintiff, Mr. Adler, is estopped from

11  asserting his copyright claim against Intermedia because, by

12  his own admission, he allowed Mr. DiCarlo to represent to the

13  world that RelyNet held the copyright in the ZeroForum

14  software.

15         Two, that Mr. Adler admitted that Intermedia copies

16  only the HTML response.  And that Intermedia's users

17  automatically save the HTML response generated by RelyNet's

18  servers in the RAM and cache of their computers.  An HTML

19  response, according to Intermedia's argument, is not the

20  ZeroForum source code, and therefore Intermedia does not, in

21  fact, copy the ZeroForum source code and is not infringing

22  any copyright in the ZeroForum software.

23         Third, that Intermedia alternatively argues that if

24  copying the HTML response somehow violates Adler's copyright

25  in the ZeroForum software, such copying constitutes fair use

1   because, among other reasons, its users copy the HTML
2   response for the sole purpose of enhancing Internet usage.
3   Citing Perfect 10, Inc. vs. Amazon.com, 508 F.3d 1146, a
4   Ninth Circuit case 2007, holding that when a web user's
5   computer automatically caches information for the purpose of
6   assisting in accessing the Internet, such is a transformative
7   use and not copyright infringement.
8         And, finally, Intermedia argues that they can't be
9   liable for copyright infringement.  They also can't be held
10  liable for secondary infringement.
11        Mr. Adler has argued that he's not estopped from
12  asserting his copyrights against Intermedia because, even
13  though he was aware that the copyright notice on RelyNet's
14  website reflected that RelyNet owned the copyright in
15  ZeroForum, he was unsure at the time what a copyright notice
16  meant.
17        He also argues that because the domain name
18  registration for Zeroforum.com lists only his name and his
19  home address, that Intermedia should have known that he was
20  the sole owner of the ZeroForum software copyright.
21        He also argues that Intermedia has directly copied and
22  therefore infringed his ZeroForum software, that Intermedia's
23  infringement does not constitute fair use, and that there are
24  genuine issues of material fact which remain which would
25  affect his claim for secondary copyright infringement.

1           Based on the papers and argument of counsel, the Court
2  is going to grant Intermedia's motion for summary judgment.
3  They should not have been named and do not belong in this
4  lawsuit.
5           In asserting an estoppel claim, a defendant must
6  establish:  One, that the party to be estopped must know the
7  facts; two, that he must intend that his conduct shall be
8  acted on or must act that the party asserting the estoppel
9  has a right to believe it is so intended; and three, that the
10 latter must be ignorant of the true facts; and four, he must
11 rely on the former's conduct to his injury.  Citing
12 Carmichael Lodge No. 2103 vs. Leonard, a 2009 case, Eastern
13 District of California, September 16, 2009.
14          In this case, the undisputed facts do show, as found
15 by the Court, that Mr. Adler did hold RelyNet out to
16 Intermedia as the copyright holder of the ZeroForum software.
17 Mr. Adler admitted he knew that Mr. DiCarlo changed the
18 copyright notice to reflect that RelyNet owned the copyright
19 in ZeroForum.  Mr. Adler also admitted that he had full
20 access to both the RelyNet servers and the ZeroForum
21 software.  Keep in mind that Intermedia has been around in
22 this company and involved with this company since 2002.
23          In this case, Mr. Adler is not acknowledging or taking
24 responsibility for his own actions.  He could have easily
25 changed the copyright notice to indicate he owns the

1  software.  Mr. Adler, however, chose to allow Mr. DiCarlo to
2  represent that RelyNet owned the software.  As such, his
3  actions with respect to Intermedia were such that Intermedia
4  was justified in relying upon them.
5          Moreover, Intermedia was unaware that Mr. Adler
6  claimed an ownership interest in the ZeroForum software until
7  Mr. Adler sent his cease and desist letter in 2008, long
8  after Intermedia had already relied upon the alleged faulty
9  copyright notice for six years.  Mr. Adler's 2008 letter does
10 not alleviate his previous action of holding RelyNet out as
11 the owner of the software.  As such, Mr. Adler's own
12 admissions show there is no genuine issue of material fact
13 that he held RelyNet out to the world as the owner of
14 ZeroForum software and that he intended the world to rely on
15 such claims.  Intermedia relied upon Adler's actions to its
16 detriment.  And as such, Mr. Adler is estopped with respect
17 to Intermedia from asserting his copyright against
18 Intermedia, and Intermedia's motion for summary judgment is
19 granted.
20         Mr. Adler has also stated a claim for both
21 contributory and vicarious infringement against Intermedia.
22 A person is liable for contributory infringement if he:  One,
23 has knowledge of another's infringement; and two, either
24 materially contributes to or induces that infringement.
25 That's Perfect 10, Inc. vs. Visa International, 494 F.3d 788,

1  a Ninth Circuit case 2007.
2          Mr. Adler has no direct evidence that Intermedia knew,
3  or should have known, of its acts of alleged copyright
4  infringement.  Mr. Adler testified that prior to 2008, he
5  never informed Intermedia of his alleged copyright in the
6  ZeroForum software, his alleged ownership in RelyNet, or his
7  business dispute with DiCarlo.
8          In this case, again, it's somewhat different with
9  respect to Intermedia as opposed to Internet Brands.
10 Mr. Adler clearly knew about Intermedia.  He interacted with
11 them, although he now tries to claim that he didn't know as
12 much, but the undisputed facts conclude otherwise.  As
13 indicated, he did testify that prior to 2008, he never
14 informed Intermedia of his alleged copyright or his alleged
15 ownership.  That was found at his deposition, pages 228 and
16 page 242.  Instead, Mr. Adler's activity hid this information
17 from Intermedia and allowed RelyNet to represent to
18 Intermedia that it held the copyright in the ZeroForum
19 software.  Without knowledge of infringing activities of
20 third parties, Intermedia cannot, as a matter of law, be held
21 liable for contributory infringement.  As such, Intermedia's
22 motion for summary judgment as to Mr. Adler's contributory
23 infringement claim is granted.
24         And, finally, Intermedia is not vicariously liable for
25 RelyNet's alleged infringement.  To state a claim for

1   vicarious copyright infringement, a plaintiff must allege
2   that defendant has the right and ability to supervise the
3   infringing conduct and a direct financial interest in the
4   infringing activity.  Again citing the Perfect 10, Inc. case.
5   There is no genuine issue of material fact that Intermedia
6   lacks any legal right, or ability, to stop RelyNet's alleged
7   infringing activities.  As such, Intermedia lacks the
8   requisite control over RelyNet's alleged infringing
9   activities to support a claim for vicarious infringement.
10  Accordingly, Intermedia's motion for summary judgment on
11  Adler's vicarious copyright infringement claim is granted.
12          The Court need not and does not rule on the remaining
13  arguments to grant summary judgment in Intermedia's favor
14  and, as such, declines to reach the merits of those remaining
15  issues.
16          It's Ms. Heikka; right?
17          MS. HEIKKA:  Yes.
18          THE COURT:  I'll ask you to prepare an order with
19  respect to the Court's ruling.  Run it by Mr. Peterson so
20  that he can approve it as to form, and we will execute the
21  order granting summary judgment.
22          Turning to Internet Brands' motion for summary
23  judgment, there are, as I've indicated, seven arguments
24  raised by Internet Brands as set forth on page 2 of their
25  opening brief.  As to the first three arguments, as the

1    Court's comments have indicated, I think that Internet
2    Brands' arguments are, unfortunately for Internet Brands,
3    tied to RelyNet.
4         And as I've indicated, I think there are clearly
5    genuine issues of material fact that need to be tried to a
6    jury as to whether, in fact, Mr. Adler owns or does not own
7    the copyrighted material; that even if he owned the copyright
8    material, whether he gave a nonexclusive license with rights
9    to sublicense to RelyNet, which it's undisputed RelyNet did
10   license this software to Internet; and whether Internet
11   Brands' defense that it does, and there's no dispute that it
12   does, have a nonexclusive license to use this copyright
13   material, whether that would be a complete defense.  That, in
14   turn, depends upon whether RelyNet really had a valid right
15   to issue that license in the first place.  So I can't grant,
16   and will not grant, summary judgment on those first three
17   motions.
18        But I want to turn to the damages issues.  And those
19   arguments are that even if this Court found, and I'm not
20   finding, so the record's clear, that Internet Brands
21   infringed upon plaintiff's copyright.  I'm simply saying
22   there's genuine issues of material fact that preclude summary
23   judgment on that issue.
24        Internet Brands argues that plaintiff has no evidence
25   of actual damages or profits attributable to the

1    infringement.  In this case, Internet Brands has argued that
2    plaintiff never disclosed, and there is, in fact, no
3    documents contained in the summary judgment motions in which
4    plaintiff has disclosed a document, witness testimony, or any
5    other evidence of copyright damages.  Mr. Peterson has
6    attempted to argue that he now has that evidence, that it
7    comes from the testimony of a person most knowledgeable, but
8    it is, in fact, untimely.  Mr. Peterson has admitted in the
9    opposition that there is, in fact, no evidence and there was
10   no evidence at the time of the summary judgment motion of
11   actual damages.  He suggested in the brief that he would in
12   the future disclose such evidence.  However, the deadline for
13   disclosing all expert testimony, including rebuttal
14   testimony, was July 20, 2009.  The deadline for completion of
15   discovery was September 4, 2009.  And again, there is an
16   admission that there is no evidence in this summary judgment
17   motion of damages.
18        Plaintiff has not sought relief under Rule 56(f) and,
19   in fact, at the time of the summary judgment -- actually,
20   discovery had ended September 4, 2009.  Mr. Adler has not, as
21   a matter of law, met his burden of proof with respect to
22   actual damages and infringer's profits.  As such, I am
23   granting Internet Brands' motion for summary adjudication on
24   this issue of actual damages as a result of any alleged
25   copyright infringement by Internet Brands.

1           Turning to statutory damages, Internet Brands argues
2   that plaintiff, as a matter of law, cannot meet his burden on
3   the allegation of willful infringement.  They argue that, as
4   a matter of law, Internet Brands was an innocent infringer,
5   if it infringed at all.
6           And, finally, that plaintiff, as a matter of law,
7   can't recover more than $30,000 against defendant Internet
8   Brands.
9           Statutory damages, in the Court's discretion, can
10  range from $750 and $30,000 under 17 USC Section 504(c)(1).
11  The statutory award may be increased or decreased if the
12  infringement was willful or innocent, respectively.  That's
13  17 USC Section 504(c)(2).
14          In order to prove a willful violation, plaintiff must
15  demonstrate the infringer knowingly and deliberately engaged
16  in copyright infringement.  Sony Computer Entertainment
17  America, Inc. vs. Filipiak, a Northern District case 2008,
18  406 F.Supp.2d 1068.  The plaintiff bears the burden of
19  proving willfulness by showing defendant actually knew or
20  should have known that it was infringing plaintiff's
21  copyrights.  As a matter of law, this Court will not infer
22  willfulness whenever the alleged infringement occurs in the
23  context of a disputed title to the copyrighted material.
24  Danjaq LLC vs. Sony Corp., 263 F.3d 942, a Ninth Circuit case
25  2001.

1            In this case, plaintiff has not and cannot meet his
2    burden of proof regarding willfulness.  Internet Brands used
3    the copyrighted material pursuant to a written license.
4    That's undisputed.  Internet Brands obtained representations
5    and warranties that RelyNet was, in fact, the true and lawful
6    owner of the copyrighted material.  In addition, the
7    ZeroForum website held out that RelyNet owned the copyrights
8    to ZeroForum software.  Internet Brands did not know of any
9    competing interest in the copyrights of ZeroForum until or
10   after September 15, 2008.
11           Plaintiff argues that Internet Brands willfully
12   copyrighted the ZeroForum software by relying on:  One, the
13   existence of the copyright certificates; and, two, an alleged
14   cease and desist order.  However, plaintiff cites no
15   authority for the proposition that the mere existence of a
16   copyright certificate automatically elevates an infringement
17   to willful.
18           Furthermore, plaintiff has not produced and I still
19   have not seen the alleged cease and desist letter that he
20   claims was sent to Internet Brands.  There is, in fact, no
21   letter in the record, the disclosures, or otherwise.
22   Plaintiff's only evidence of the letter is his own
23   declaration which the Court has granted a motion to strike.
24   And even in that declaration, he states only that he
25   instructed his attorneys to send the letter.  He does not in

1   his declaration say that the letter was ever sent.  Plaintiff
2   cannot rely on a document that he has not produced and no one
3   admits to seeing, including himself.
4           As a matter of law, the undisputed facts show that
5   Internet Brands is not a willful infringer.  Even if the
6   title was not in dispute, plaintiff has not produced evidence
7   that Internet Brands willfully violated his copyrights, and
8   there is no genuine issue of material fact that precludes
9   that conclusion.  As such, plaintiff's statutory damages
10  award against Internet Brands cannot exceed $30,000.
11          Defendant Internet Brands also argues -- correct me if
12  I'm wrong, but I think you're arguing also that damages in
13  this case -- you are -- on page 15 of your brief, that the
14  Court may reduce the statutory award of damages if the
15  infringement was innocent.  In a case where the infringer
16  sustains the burden of proving, and the court finds, that
17  such infringer was not aware and had no reason to believe
18  that his or her acts constituted an infringement of
19  copyright, the court, in its discretion, may reduce the award
20  of statutory damages to a sum of not less than $200.  That's
21  found at 17 USC Section 504(c)(2).
22          An innocent infringement will be found when the
23  alleged infringer did not know the use of the copyrighted
24  material constituted infringement. Citing Branch vs. Ogilvy
25  & Mather, Inc., 772 F.Supp. 1359, a Southern District of New

1  York case 1991.
2          Internet Brands used the copyrighted material pursuant
3  to a written license.  Internet Brands obtained
4  representations and warranties that RelyNet was the true and
5  lawful owner of the copyrighted material.  The ZeroForum
6  website held out that RelyNet owned the copyrights to
7  ZeroForum software.
8          At worst, and the Court finds as a matter of law, that
9  Internet Brands is an innocent infringer, and therefore the
10 Court grants summary adjudication and finds that the maximum
11 allowable statutory damages, if any, can only be $200.
12         Finally, Internet Brands argues that it's entitled to
13 an award for attorney's fees and costs.  The Court is
14 declining to take up that issue at this time.  There are
15 procedures under our local rules for motions for attorney's
16 fees to be filed and also under the Federal Rules of Civil
17 Procedure.  I only address those issues when and, in fact, a
18 proper motion for attorney's fees is presented to the Court.
19         So if you want to file that motion, you are free to do
20 so.  Just make sure it's in compliance with the Federal Rules
21 of Civil Procedure and our local rules, in particular, and
22 then I will take up that issue if and when it's properly
23 presented to me.
24         Then finally turning to the motion for summary
25 judgment brought by Mr. DiCarlo and RelyNet.  This is the

1  crux of this case, and it is, as I said, a case which needs
2  to be tried.  There are a number of arguments raised by
3  Mr. Adler which I think warrants that he have his day in
4  court.  Obviously, I don't agree that the lawsuit should be
5  expanded to include either Intermedia or Internet Brands.
6  I'm not sure why Vortex Media Group never responded.  And I
7  take it that you took their default.
8            Anybody know why they didn't respond?
9            MR. PETERSON:  If anybody does, they're not saying,
10 because we've asked.
11           THE COURT:  Okay.  Do they still exist?
12           MR. PETERSON:  As far as we know.
13           MR. DAVIS:  I believe they still do exist.
14           THE COURT:  Okay.  Interesting.  Be that as it may,
15 that's not before me.  As I said, this case clearly on the
16 copyright infringement claim cries out for a trial.  And as I
17 indicated, out of 40 undisputed facts, 34 of them were
18 disputed.  There's a real issue of whether Mr. Adler, for
19 example, was ever compensated for his contributions to
20 RelyNet.
21           And I wish your clients were here, because it is of
22 obvious concern to me that two people that have known each
23 other since second grade have ended up in a federal district
24 court over this.  I make that comment just as an aside.  But
25 I guess money does a lot of things to people, and obviously

1  everything changed when 2.6 million came into the hands of
2  Mr. DiCarlo.  It's unfortunate.  Be that as it may, it's
3  before me, and we're going to go forward.
4       Because there are so many issues, genuine issues of
5  material fact that have been raised by Mr. Adler with respect
6  to the copyright infringement claim, the Court is precluded
7  from granting summary judgment in RelyNet and Mr. DiCarlo's
8  favor on that claim, and we will go forward on that claim.
9       Other examples of factual disputes include whether
10 Mr. Adler actually wrote the ZeroForum software exclusively
11 for use by RelyNet, as well as RelyNet customers, and whether
12 Mr. Adler freely consented to the use by RelyNet of this
13 software for its business and to the use of the software by
14 RelyNet customers.  There's the issue of whether he actually
15 received consideration for the alleged implied license.  This
16 whole issue that we discussed about derivative software and
17 what was intended by the parties, what was understood by the
18 parties, all those issues need to be presented to a jury.
19 They may ultimately result in the Court being involved, once
20 I hear the testimony and there are Rule 50 motions filed, but
21 at this point I can't decide this as matter of law that
22 RelyNet and DiCarlo are entitled to summary judgment on that
23 claim.
24      The fraud claim is different.  And there are a number
25 of defenses that have been raised as to the fraud claim.  The

1  arguments are as follows:
2         To sustain a fraud claim, Mr. Adler must prove that
3  Mr. DiCarlo made a false promise or statement of fact to
4  Mr. Adler; that at the time he made it, Mr. DiCarlo knew it
5  was false; that Mr. DiCarlo intended to induce Mr. Adler's
6  reliance upon the fraud; that Mr. Adler did, in fact, rely
7  upon the false statement or promise, and that his reliance
8  was justifiable and reasonable; and, finally, that Mr. Adler
9  suffered damage as a result of his reliance upon the fraud.
10 That's In re Napster, Inc. Copyright Litigation, 479 F.3d
11 1078, a Ninth Circuit case 2007.
12        Defendants have argued that Mr. Adler's claims for
13 fraud are barred by the three-year statute of limitations.
14 That the only fraudulent act that Mr. Adler alleges within
15 the three-year limitations period is, in fact, Mr. DiCarlo's
16 execution of the June 2005 letter agreement.  That act,
17 however, on its face, as a matter of law, cannot support a
18 claim for fraud.  That's the defendants' argument.  And also
19 the defendants argue that the undisputed facts show that
20 Mr. Adler did not detrimentally rely upon Mr. DiCarlo's
21 alleged promise.
22        There wasn't a lot of opposition in the papers, as I
23 indicated, to the fraud claim, but simply the somewhat
24 conclusory argument that the statute of limitations does not
25 bar this fraud claim because the fraud claim relates directly

1    to the act of signing the 2005 letter agreement.
2           On the fraud claim, the Court finds, as a matter of
3    law, that it is, in fact, barred by the statute of
4    limitations because Mr. Adler was aware of the fraud more
5    than three years before filing his suit.  The complaint
6    itself admits that the fraud claim is based upon, quote,
7    continuing promises and representations, close quote, by
8    Mr. DiCarlo to Mr. Adler dating back to before October of
9    2002.  Mr. Adler argues that the clock restarted
10   when Mr. DiCarlo signed that 2005 letter agreement.  However,
11   the 2005 letter agreement on its face does not support a
12   claim for fraud.  On its face, the promise contained in the
13   2005 letter agreement was not, in fact, an unconditional
14   promise to deliver Adler 49 percent of the RelyNet stock.
15   Rather, it was a memorandum acknowledging an understanding
16   between the parties.  If Mr. DiCarlo did not deliver
17   49 percent of the stock to Mr. Adler by January 1st, 2006,
18   Mr. Adler would terminate his employment with RelyNet.  As
19   such, Mr. Adler was, in fact, not promised anything in the
20   2005 letter.  Accordingly, this letter agreement cannot
21   sustain his claim for fraud, and, in fact, it does not and
22   did not restart the clock for his fraud claim.
23          Accordingly, Mr. Adler's fraud claim is barred by the
24   statute of limitations, and defendants' motion for summary
25   judgment as to the fraud claim is granted.

1          Those are the Court's rulings.  Mr. Davis, I'll have
2   you prepare the proposed order with respect to your motion
3   for summary judgment.  Submit it to Mr. Vine.
4          We have a pretrial conference set very soon, I think.
5   When is that set for, Mr. Vine?
6          THE CLERK:  December 16th, your Honor.
7          THE COURT:  Internet Brands and Mr. Adler can discuss
8   whether you want to continue to keep them in the case given
9   the Court's rulings.  That's up to you.  Right now, you're
10  not necessarily out of the case.  When is the pretrial?
11         THE CLERK:  December 16th.
12         THE COURT:  Okay.  Intermedia, you do not have to be
13  here for the December 16th pretrial.  And we'll see everybody
14  on December 16th.  Joint pretrial conference statements are
15  due, what, a week before?
16         THE CLERK:  Seven days prior.
17         THE COURT:  Seven days prior.  Make sure it really is
18  a joint pretrial statement, not a this is my view and this is
19  your view type of statement.  I know there are disagreements.
20  Let's see if you can actually agree on some things and we can
21  focus on what the trial's going to be about.  Okay.
22         MR. PETERSON:  Yes, your Honor.
23         THE COURT:  All right.  Thank you, everyone.
24         (Proceedings concluded at 3:26 p.m.)
25

1        I certify that the foregoing is a correct transcript
2   from the record of proceedings in the above-entitled matter.
3
4
5                            /s/ Kelly O'Halloran
6                            KELLY O'HALLORAN, CSR #6660