1  STEPHEN L. DAVIS (State Bar No. 149817)
   MARK R. LEONARD (State Bar No. 219186)
2  DAVIS & LEONARD, LLP
   8880 Cal Center Drive, Suite 180
3  Sacramento, California 95826
   Telephone:  (916) 362-9000
4  Fax:  (916) 362-9066
   E-mail: sdavis@davisandleonard.com
5
6  Attorneys for Defendants/Counterclaimants
   RelyNet, Inc. and Michael DiCarlo
7

8              UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 DUSTIN K. ADLER, an individual,          CASE NO. 2-08-CV-01333-JAM-EFB

12      Plaintiff,                          **DEFENDANTS' TRIAL BRIEF**

13      v.                                  Trial Date:   January 25, 2010
                                            Time:         9:00 a.m.
14 RELYNET, INC. a California corporation and  Courtroom:  6
   MICHAEL DICARLO, an individual,
15 INTERNET BRANDS, INC., a Delaware
   Corporation, INTERMEDIA OUTDOORS,
16 INC., a Delaware Corporation, VORTEX
   MEDIA GROUP, INC., a Delaware
17 Corporation and DOES 1 through 50,
   inclusively,
18
        Defendants.
19

20 RELYNET, INC., a California Corporation,
   MICHAEL DICARLO, an individual,
21
        Counterclaimants,
22
        v.
23
   DUSTIN K. ADLER, an individual,
24
        Counterdefendant.
25

26 ///

27 ///

28

DEFENDANTS' TRIAL BRIEF

1          In this case, Plaintiff Dustin Adler claims that Defendants RelyNet, Inc. and

2     Michael DiCarlo have infringed his copyrights in three successive versions of a message

3     board computer software program called ZeroForum.  The evidence at trial will show that

4     Adler's claims fail for several reasons.  First, the evidence will show beyond any doubt that

5     the latter two works were "works made for hire" developed by Adler within the course and

6     scope of his employment with RelyNet, Inc., and therefore are owned by RelyNet.  Adler's

7     claims for infringement are barred, because by law a copyright owner cannot sue a co-

8     owner for copyright infringement.  Even if Adler can show that he is the owner of the first

9     version of the software, since RelyNet is, at a minimum, a co-owner of the combined work

10     that Adler alleges was infringed, Adler cannot assert a copyright infringement claim as a

11     matter of law.

12          Second, to the extent any question remains whether any of the works are works

13     made for hire, Adler's claims are barred by the doctrines of waiver, estoppel, and implied

14     license.  The evidence will show that Adler developed the software for RelyNet and its

15     customers, that he personally delivered and installed the software for use by RelyNet and

16     its customers, that he never informed anyone until after he was fired in August 2005 that

17     he claimed to be the copyright owner, that in fact he consented to the use by RelyNet of its

18     own copyright notice on the software, and that he was paid in part for his development of

19     this software.  Under these facts, and under all three of these legal theories, he gave up his

20     right later to exclude RelyNet and its customers from using the software.

21          Third, Adler has no evidence of damages.  He has hired an expert witness on

22     damages, but that expert adequately disclosed a damages theory based solely on a fraud

23     claim, not a copyright claim.  It is clear that, at least as of the time of his deposition, the

24     expert had not performed any work sufficient to opine on copyright damages.  Adler has

25     no other witness capable of testifying about RelyNet's financial documents in a way

26     needed to ascertain profits to which Adler might be entitled if he could establish liability.

27

28

DEFENDANTS' TRIAL BRIEF

1
2

# SUMMARY OF FACTS

3
4
5
6
7
8
9
10
11
12

Plaintiff Dustin Adler and Defendant Michael DiCarlo were childhood friends. Both of them developed an early interest in computers and the Internet.  In about 1998, DiCarlo formed RelyNet as a sole proprietorship.  Its original business was to host customer's web sites.  In 1999, DiCarlo briefly took a partner named Tim Roberts, but he purchased Roberts' interest back the same year, and from the end of 1999 on RelyNet was a sole proprietorship owned by DiCarlo.  DiCarlo filed a fictitious business name statement with the County of Sacramento, identifying Relynet as a sole proprietorship owned by himself.  At its inception RelyNet operated out of DiCarlo's apartment, and later out of his house.  He opened a bank account at with himself as the sole authorized signatory.  He purchased RelyNet's equipment and negotiated and signed its leases for office space.

13
14
15
16
17

Adler was not involved in RelyNet at its beginning.  In 1999 Adler obtained employment as a software developer with a company called Objective Systems Integrators ("OSI") in Folsom, California in June 2000, and then worked at several different other jobs as a software developer.  While working as a programmer at OSI Adler understood that his employer owned the software that he developed for it.

18
19
20
21
22
23

Adler and DiCarlo shared an interest in Honda automobiles as well as computers. In 2000 Adler and DiCarlo discovered that a popular Internet message board for Honda enthusiasts, then known as Honda-Acura.net, was going to lose its web hosting.  DiCarlo decided that RelyNet could host Honda-Acura.net.  RelyNet took over the hosting of Honda-Acura.net, and from that site it formed a new site Honda-Acura.Rely.Net.  DiCarlo subsequently renamed and registered the site with the domain name Honda-Tech.com.

24
25
26
27
28

Internet bulletin boards (also known as message boards), such as the Honda-Acura.net message board, provide an electronic forum in which participants share information and dialogue regarding a topic of interest.  The Honda-Acura.net bulletin board community comprised a forum of automobile enthusiasts interested particularly in Honda and Acura vehicles.  Website bulletin board forums are "hosted" on one or more

DEFENDANTS' TRIAL BRIEF

1  "servers", which provide an operational platform for functional bulletin board websites by

2  performing services for connected clients (i.e., websites) as part of a client-server

3  architecture.

4       Originally, RelyNet used commercial software program called Ultimate Bulletin

5  Board (UBB) to operate the Honda-Tech.com.   But in early 2000, while he was still an

6  employee with OSI, Adler developed the initial versions of a new message board software

7  program that he and DiCarlo decided to call "ZeroForum."  There is no dispute in this caes

8  that at all relevant times until his firing on August 1, 2005 Adler was by the far the

9  principal author of the ZeroForum software.  Both Michael DiCarlo and Layton

10  Wedgeworth made small contributions to the software, but Adler wrote the great majority

11  of the actual source code.

12       Adler has claimed, and Defendants expect at trial he will claim, that he always

13  intended the ZeroForum software to be his own, and that he granted RelyNet the right to

14  use that software solely on the understanding that he would be given his due ownership in

15  the RelyNet business.  But the actual evidence of his words and conduct shows the

16  opposite.  Adler developed ZeroForum almost solely for RelyNet.  There are no writings

17  whatsoever in which Adler clearly, or even unclearly, reserved rights in the software.  The

18  documents and communications involving the software refer to it as RelyNet software.

19  Early on, RelyNet used its own name on the copyright for the software, and Adler did not

20  object.  No RelyNet customer would ever have had any reason to believe that RelyNet, the

21  entity, rather than Adler, the person, was not the owner of the software.  Adler sometimes

22  wrote code for the RelyNet software using RelyNet computers, at RelyNet's offices.  He

23  was paid for what he did.  First, he was paid a portion of the miniscule ad revenues that

24  came from the websites powered by ZeroForum; later, he received regular salary as a @-2

25  employee of RelyNet.

26       In late 2002, with RelyNet's message board business beginning to grow, DiCarlo

27  decided to incorporate RelyNet, and he incorporated RelyNet, Inc. in October 2002.  Adler

28  was aware as of October 2002 that DiCarlo had formed RelyNet, Inc.  He wanted to be

DEFENDANTS' TRIAL BRIEF

1   made a formal shareholder, and as early as December 2003 asked to be made a

2   shareholder, but DiCarlo never transferred any shares to him. After two years of

3   employment with RelyNet, Adler became disenchanted, and he threatened in a letter in

4   June 2005 to Michael DiCarlo that he would leave RelyNet if DiCarlo did not pay him

5   49% of RelyNet's shares of stock. Meanwhile, without telling DiCarlo, Adler began

6   sabotaging RelyNet's computer system, with the goal of making it impossible for RelyNet

7   to continue using the ZeroForum software to operate customers' bulletin board websites in

8   the event he left employment with RelyNet. DiCarlo discovered what Adler was doing,

9   and terminated his employment with Relynet on August 1, 2005.

10

11                                  **ARGUMENT**

12   I.      ELEMENTS OF A COPYRIGHT INFRINGEMENT CLAIM.

13          To establish infringement, "two elements must be proven: (1) ownership of a valid

14   copyright, and (2) copying of constituent elements of the work that are original." *Rice v.*

15   *Fox Broad. Co.,* 330 F.3d 1170, 1174 (9th Cir.2003) (citing *Feist Publ'ns, Inc. v. Rural*

16   *Tel. Service Co.,* 499 U.S. 340, 361 (1991)). In this suit Adler claims ownership of three

17   versions of ZeroForum message board software: version 2.0.5a Siva, which was completed

18   and published in 2002; version 2.0.6c, which was completed and published in 2003, and

19   version 2.1.2, which was completed and published in 2005. He claims that defendants

20   DiCarlo and RelyNet, Inc have infringed his software, at least since the termination of his

21   employment on August 1, 2005.

22          The element of "copying" is not in dispute in this case. There is no dispute that all

23   versions of ZeroForum software used by RelyNet, including versions that were developed

24   after Adler was fired from RelyNet in August 2005, are based at least in part on the

25   original ZeroForum software written by Adler. There is no evidence of the extent to which

26   subsequent versions of Relynet software were based upon Adler's original software,

27   because Adler did not retain an expert to analyze the post-2005 software.

28

DEFENDANTS' TRIAL BRIEF

II.    ADLER'S CLAIMS FOR INFRINGEMENT FAIL BECAUSE THE 2.0.6 AND 2.1.2 VERSIONS WERE "WORKS MADE FOR HIRE" OWNED BY RELYNET.

A copyrightable work that is created by an employee within the scope of his employment is deemed to be a "work made for hire" under the Copyright law.   17 U.S.C. §101.  For copyright purposes, the author and owner of a "work made for hire" is the employer.  17 U.S.C. §201 (b); *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).  On a copyright infringement claim, a work is prepared within the scope of one's employment, for the purpose of considering whether a work was "made for hire," if: (1) it is the kind of work the author is employed to perform; (2) the creation of the work occurred substantially within authorized work hours and space; and (3) the creation of the work was actuated, at least in part, by a purpose to serve the employer. *Gilpin v. Siebert*, 419 F.Supp.2d 1288,1295 (D. Ore. 2006).  When an employer hires an employee or independent contractor to produce works of an artistic nature, courts will presume in the absence of contrary proof that the parties expected the employer to own the copyright and that the artist set his price accordingly. *May v. Morganelli-Heumann & Associates*, 618 F.2d 1363, 1368 (9th Cir. 1980); *see Shaul v. Cherry Valley-Springfield Cent. School Dist.*, 363 F.3d 177, 186 (2d Cir. 2004).  Computer software authored by a programmer in the scope of his employment is a "work made for hire" belonging to the employer.  *See Avtec Systems, Inc. v. Pfeiffer*, 21 F.3d 568 (4th Cir. 1994) (computer software held to be work made for hire owned by employer even though programmer wrote it at home during non-work hours).

There is no dispute that from January 2003 to August 1, 2005 Adler was a salaried employee of RelyNet.  Nor is there any dispute that Adler authored and finished Versions 2.0.6c and 2.1.2 during the time that he was a RelyNet employee.  The only question is whether he wrote Versions 2.0.6c and 2.1.2 within the scope of his employment.  If he did, then they are works made for hire owned by RelyNet, and his infringement claim must fail.

A.    Adler Indisputably Wrote and Published The Latter Two Registered Works In The Course Of Employment With RelyNet.

DEFENDANTS' TRIAL BRIEF

1    Defendants expect that Adler will argue that he developed the ZeroForum software

2    on his own, and not as part of his employment with ZeroForum.  Although Adler has sued

3    for infringement of three different versions of the ZeroForum software, the one at issue is

4    really the last and most recent one, version 2.1.2, Copyright Reg. No. TX -6-210-249,

5    which according to Adler's own copyright registration form was completed and first

6    published on May 27, 2005, while Adler was still an employee of RelyNet.

7    The chief question is whether Adler created the ZeroForum software "in the scope

8    of" his employment.  *See Gilpin v. Siebert*, 419 F.Supp.2d 1288, 1295 (D. Ore. 2006).  The

9    main issue is whether the authorship of the software was "of the kind" of work that the

10    employee was employed to perform.  If it was, then courts will tend to find that the work

11    was authored within the scope of employment despite the fact it was authored during off

12    hours, at home, by the employee.  *See Gilpin v. Siebert*, 419 F.Supp.2d 1288,1295 (D. Ore.

13    2006) (employee-authored computer software held to belong to employer) (citing *Miller v.*

14    *CP Chems., Inc.,* 808 F.Supp. 1238, 1242-44 (D.S.C.1992) (computer program prepared at

15    home during off-hours, without direction or extra compensation from employer held work-

16    for-hire), *appeal dismissed,* No. 93-1045 (4th Cir. April 13, 1993); *Marshall v. Miles Lab.,*

17    *Inc.,* 647 F.Supp. 1326, 1330 (N.D. Ind.1986) (same, regarding article written for

18    publication in scientific journal); *In re Simplified Info. Sys., Inc.,* 89 B.R. 538, 542

19    (W.D.Pa.1988) (same, regarding computer software)).

20    There can be no dispute in this case that ZeroForum versions 2.0.6c and 2.1.2 were

21    written by Adler within the scope of his employment with RelyNet.  The only purpose for

22    writing the software was so ZeroForum could use it.  Adler himself admits that the

23    software was his biggest contribution to the RelyNet business.  He never tried to license it

24    to anyone else, or even to develop derivative works for any other purpose.  He authored the

25    software from 2003 to 2005 in part while working on RelyNet computers in RelyNet's

26    offices.  Adler's primary profession has been as a computer programmer, and writing

27    software is a significant part of what RelyNet hired him to do.  He personally installed

28    each update of the software on RelyNet's computers for use with RelyNet's customers'

1   message boards.  There is no evidence that during the entire time he was employed by

2   RelyNet from January 2003 to August 2005 he ever bargained for or obtained any

3   consideration for his software from *anyone* other than his wages as an employee of

4   RelyNet.  He consented to RelyNet's use of its own name in the copyright notice used to

5   designate the ownership of the software.

6        On these undisputed facts, regardless of any subjective beliefs or wishes of Adler's,

7   the versions of ZeroForum he authored from 2003 to 2005, including the latter two

8   versions he copyrighted, were prepared within the scope of his employment, and therefore

9   belong to Relynet.  Because he does not own these versions of the software, he cannot sue

10  anyone for infringing them.

11
            B.    Since All Of The Allegedly Infringing Software Incorporated Version 2.1.2,
12                 RelyNet Is A Co-Owner Of The Copyright In That Software, And
                   Therefore Cannot Be Liable to Adler For Copyright Infringement.
13

14       Since RelyNet is the legitimate owner of versions 2.0.6c and 2.1.2 of the

15  ZeroForum software, Adler cannot assert a claim for infringement of those two versions.

16  Adler no doubt will argue that the bulk of the software was written by him before he was

17  an employee.  Even if true, however, Adler cannot assert a claim for infringement, because

18  RelyNet is a co-owner of the entire copyrighted work, and a co-owner of a copyrighted

19  work cannot sue his co-owner.  *See Oddo v. Ries*, 743 F. 2d 630, 633 (9th Cir. 1984).  Each

20  co-owner of a copyrighted work has an independent right to use or license the usage of the

21  copyright.  If a co-author has failed to share profits due a fellow co-author for exploitation

22  of the work, then an action for an accounting may lie, but there is no liability for

23  infringement.  *Oddo v. Ries*, 743 F.2d at 633; *see Picture Music, Inc. v. Bourne, Inc.*, 314

24  F. Supp. 640, 646 (S.D.N.Y. 1970) (accounting action).

25       It is therefore immaterial whether or not Adler at one point owned the original

26  version of the ZeroForum software.  When he became an employee of RelyNet, his work

27  became the work of his employer, and the works that subsequently were registered as

28  versions 2.0.6c and 2.1.2 were, at best for him, joint works in which RelyNet had co-

1    ownership as his employer.  Under the co-ownership doctrine, he is barred from suing

2    RelyNet for infringement.

3

4    III.    ADLER'S CLAIMS FOR COPYRIGHT INFRINGEMENT ARE BARRED BY
         THE DOCTRINES OF ESTOPPEL, IMPLIED LICENSE, AND WAIVER.

5

6        As an entirely separate defense, Adler's claims are barred by the equitable defenses

7    of estoppels, implied license, and waiver.  Although the elements of these defenses are not

8    identical, they are in this case based upon the same basic pattern of conduct: Adler's

9    consent to the use by RelyNet and its customers of the ZeroForum software, his delivery of

10   that software to RelyNet and its customers, and his receipt of compensation by RelyNet for

11   his work for RelyNet.  As a result of his conduct he is barred from revoking RelyNet's

12   right to continue using the software.

13

14       A.    Adler's Infringement Claims Are Barred By The Doctrine Of Estoppel.

15

16       Equittable estoppel is a defense to copyright infringement actions. *Hampton v.*

     *Paramount Pictures Corp.,* 279 F.2d 100 (9th Cir.1960), *Carmichael Lodge No. 2103 v.*

17   *Leonard,* 2009 WL 2985476, *14-15 (E.D. Cal. 2009)[1]; *Pamfiloff v. Giant Records, Inc.,*

18   794 F.Supp. 933, 937 (N.D.Cal.1992), 4-13 Melville B. Nimmer & David Nimmer,

19   *Nimmer on Copyright* § 13.07 (2008).  "This form of estoppel is a defense in which

20   plaintiff's past conduct bars the plaintiff from asserting certain rights." *Carmichael Lodge*

21   *No. 2103,* 2009 WL 2985476, *15.

22       In a copyright infringement action, four elements are necessary to establish

23   estoppel: "(1) The party to be estopped must know the facts; (2) he must intend that his

24   conduct shall be acted on or must so act that the party asserting the estoppel has a right to

25   believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must

26   rely on the former's conduct to his injury." *Hampton,* 279 F.2d 100, 104 (9th Cir.1960);

27   _____

28   [1] Notably, the *Carmichael Lodge* case involved the same counsel as this case.

1    *Carmichael Lodge No. 2103*, 2009 WL 2985476, *15.   *accord United States v. King*

2    *Features Entertainment Inc.,* 843 F.2d 394, 399 (9th Cir.1988). "This test, so formulated,

3    does not differ from the more general approach to estoppel in this circuit. Tellingly, *King*

4    *Features* cited *Bob's Big Boy Family Rests. v. N.L.R.B.,* 625 F.2d 850, 854 (9th Cir.1980),

5    a non-copyright case, as authority for the elements of estoppel in a copyright infringement

6    action. *King Features,* 843 F.2d at 399." *Carmichael Lodge No. 2103*, 2009 WL 2985476,

7    *15; *see also Carson v. Dynegy*, 344 F.3d 446 (5th Cir. 2003).

8        The *Carson v. Dynegy* case, in which the Fifth Circuit held that the plaintiff was

9    estopped from claiming copyright infringement against his former employer, is strikingly

10   similar to this one. In *Carson v. Dynegy*, 344 F.3d 446 (5th Cir. 2003), plaintiff sued his

11   former employer for infringing the copyright in a spreadsheet computer program plaintiff

12   had written when he was an employee. Plaintiff had worked as a scheduler, not a

13   programmer, for defendant, an energy trading company. While working there he

14   developed a spreadsheet program, which he allowed and encouraged defendant to use, to

15   modify, and to prepare derivative programs from it. The court held that his claim was

16   barred by the doctrine of estoppel, notwithstanding the fact that he was not actually paid

17   any special compensation for the creation of the program. The court emphasized that, even

18   though the alleged infringement occurred after his employment was terminated, the

19   estoppel defense could be established by evidence of conduct during his employment. All

20   elements of estoppel were satisfied: plaintiff obviously intended during his employment to

21   allow defendant to use and to modify the program; he did in fact allow defendant and its

22   other employees to use it; defendant was ignorant during this time of his claim that he

23   owned the program, and defendant relied upon his conduct by incorporating the program

24   into its business. *Id*. at 453-54. The Fifth Circuit upheld summary judgment against

25   plaintiff's copyright infringement claim on estoppel grounds. *See also Carmichael Lodge*

26   *No. 2103*, 2009 WL 2985476, *15 (plaintiff's conduct during period of permitting use may

27   later bar his right to revoke permission and claim infringement).

28

1    All of the elements of estoppel are present in this case.  First, Adler knew that he

2    was delivering the ZeroForum software to RelyNet for use by RelyNet and its customers,

3    and he knew that he was doing so without promise of compensation and without DiCarlo

4    having either transferred any interest in RelyNet to him or having entered any specific

5    agreement to transfer an interest in RelyNet to Adler.  Second, by his conduct he must

6    have known that RelyNet and its customers would have assumed that RelyNet owned the

7    software, or that it had an unlimited right to use the software.  Third, RelyNet and its

8    customers were ignorant until after August 1, 2005 of any claim by Adler that he owned

9    the software.  Fourth, RelyNet and its customers relied upon Adler's conduct to their

10    damage.  Had they known that Adler might claim an exclusive interest in the software they

11    could have, and would have, either stopped using the software or negotiated for a stronger

12    ageement that would allow them to continue using it without interference by Adler.

13

14         B.     Adler's Infringement Claims Are Barred By The Doctrine Of Implied
                License.

15

16    A party may be found by its conduct to have granted another party an implied

17    license to use its copyrighted work where the party "created a work at [the other's] request

18    and handed it over, intending that [the other] copy and distribute it." *SmithKline Beecham*

19    *Consumer Healthcare, L.P. v. Watson Pharms., Inc.,* 211 F.3d 21, 25 (2d Cir.2000)

20    (quoting *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 558 (9th Cir.1990) ), *cert. denied,*

21    531 U.S. 872, 121 S.Ct. 173, 148 L.Ed.2d 118 (2000).  An implied license can by implied

22    by a party's conduct.  *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990),

23    *cert. denied*, 531 U.S. 872, 121 S. Ct. 173, 148 L. Ed. 2d 118 (2000).  A plaintiff that has,

24    by his conduct, implicitly licensed the right to another to use his copyrighted work is

25    barred from suing for infringement for the other's use.  *See Effects Assocs., Inc. v. Cohen*,

26    908 F.2d 555, 558 (9th Cir. 1990) (plaintiff's creating work at defendant's request and

27    handing it over to defendant for copying and distribution amounted to implied license);

28    *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008) (summary

1  judgment upheld against contractor's claim for infringement; his conduct amounted to

2  grant of nonexclusive, unlimited license to use and create derivative works of his

3  software); *Oddo v. Ries*, 743 F.2d 630, 632-634 (9th Cir. 1984) (author's implicitly licensed

4  partner to publish book that was derivative of his work by handing over manuscript for

5  publication).

6      The elements of an unlimited implied license are all present here. Adler delivered

7  the ZeroForum for its use and the use of its customers. As a sophisticated programmer he

8  knew or must have known that the use by RelyNet's customers of the message boards

9  would result in the "copying" he alleges as infringement in this case. He knew that

10  RelyNet would earn money in the form of ad revenue from the message boards it hosted.

11  On these facts Adler must be deemed to have granted an implied license to RelyNet (and

12  its customers) to continue using the software. He cannot now, years after the fact,

13  complain about what he allowed RelyNet and its customers to do as far back as 2002.

14      Defendants expect that Adler, while admitting (as he must) that he was employed

15  by RelyNet when the latter two copyrighted programs were written, will try to prove that

16  he did not write them "in the scope" of his employment. The facts will prove otherwise.

17  Adler wrote the software in part while working at RelyNet's office, on RelyNet computers.

18  He was paid a salary the entire time he worked as an employee.

19

20      C.    Adler's Infringement Claims Are Barred By The Doctrine Of Waiver.

21      "Waiver is the intentional relinquishment of a known right with knowledge of its

22  existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.,* 843

23  F.2d 394, 399 (9th Cir.1988). In copyright, waiver or abandonment of copyright "occurs

24  only if there is an intent by the copyright proprietor to surrender rights in his work." 4

25  Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000); *see also*

26  *Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1114 (9th Cir.1998) (discussing

27  abandonment).

28

DEFENDANTS' TRIAL BRIEF

1    From the beginning, Adler delivered copies of the ZeroForum software to RelyNet,

2    installed the software for use by RelyNet and its customers, and never asked for or

3    received any compensation.  He never reserved his rights in the software, in writing or in

4    any other form.  He consented to RelyNet's use of its name on the copyright notice

5    attached to the software.  He never attempted to use the software for any purpose apart

6    from RelyNet.  By his continuous conduct from the time he first delivered ZeroForum to

7    RelyNet, until after his termination by RelyNet in August 1, 2005, Adler gave up his

8    exclusive rights in the ZeroForum software.

9

10   IV.    RELYNET IS A CO-OWNER OF THE ZEROFORUM SOFTWARE BECAUSE
         OTHER RELYNET EMPLOYEES CONTRIBUTED TO IT.

11

12       RelyNet expects to call Layton Wedgeworth and Michael DiCarlo to testify about

     the development of the ZeroForum software.  Both will testify that Dustin Adler is,
13
     without question, the principal programmer for the ZeroForum software prior to the
14
     termination of his employment in August 2005.  But they also will testify that they made
15
     contributions to the software, even if they were much smaller than Adler's, and that these
16
     contributions took place prior to Adler's termination in August 2005.  Based upon this
17
     testimony, versions 2.0.6c and 2.1.2 of the software, at a minimum, were "joint works"
18
     with more than one author, with RelyNet as at least one of the authors by virtue of the fact
19
     that it employed all of the programmers of the software.  Since the ZeroForum software
20
     was a joint work, Adler is barred from suing the co-owner or co-owners.  *See Oddo v. Ries*,
21
     743 F. 2d 630, 633 (9th Cir. 1984).
22

23

24   V.    ADLER'S CLAIM FOR COPYRIGHT INFRINGEMENT IS BARRED
         BECAUSE HIS REGISTRATIONS ARE INVALID AS A RESULT OF FALSE
         STATEMENTS HE HAS MADE IN THEM.
25

26       A copyright registration may be invalidated, and a claim for infringement barred,  if

27   the registrant has made material false statements in the application for registration. *See*

28   *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984) ("inaccuracies in

- 13 -

1    copyright registration," when prejudicial or intended to defraud, may bar an action for

2    infringement); *Carmichael Lodge No. 2103 v. Leonard*, 2009 WL 2985476, *7 (E.D. Cal.

3    2009) (registration invalid where registrant omitted material information knowing such

4    information was in dispute).   Adler has omitted material information in this case.   For

5    example, Adler claims himself as the sole author and owner even though he published

6    versions 2.0.6 and 2.1.2 as an employee, and those works belonged to his employer,

7    RelyNet.   He knew at a minimum that RelyNet would dispute his ownership, as it did

8    immediately in response to his attorney's correspondence in 2005, yet he still omitted this

9    information.   His claims should be barred and his registrations invalidated.

10

11   VI.    ADLER'S CLAIMS FOR DAMAGES ARE BARRED OR LIMITED BECAUSE
             HE CANNOT PROVE DAMAGES.

12

13          In a claim for copyright infringement, a plaintiff that succeeds in proving the

14   defendant's liability for infringement may be able to recover either the plaintiff's actual

15   damages or profits earned by the defendant from the defendant's infringing activity.   17

16   U.S.C. §504.   It appears that plaintiff Adler in this case intends to prove that RelyNet and

17   DiCarlo have profited from the infringement of his copyrighted software, and he seeks a

18   recovery of the profits they have earned.

19          In proving the profits to which he is entitled, Plaintiff bears the burden of initially

20   proving the amount of gross revenues from infringing activities.   Plaintiff cannot meet this

21   burden by proof of gross revenues from ALL of defendants' activities.   Rather, plaintiff

22   must be able to prove gross revenues that are specifically attributable to infringing

23   activities.   *Davis v. The Gap, Inc.*, 246 F.3d 152, 159-160 (2d Cir. 2001) (plaintiff failed to

24   meet burden).   If the plaintiff seeks "indirect profits" – that is, recovery of money only

25   indirectly related to actual infringing activity – he has an obligation to make a specific,

26   threshold showing, involving non-speculative evidence, of the causal link between the

27   infringement and profits allegedly generated indirectly from the allegedly infringing

28   activities.   *Mackie v. Resier*, 296 F.3d 909 (9th Cir. 2002).   Once plaintiff meets his

1    burden, then the burden shifts to defendant to deduct costs or to deduct profits not

2    attributable to infringement.  17 U.S.C. §504(b).

3           Defendants believe that Adler will not be able to meet his initial burden of proving

4    a significant amount of gross revenue from infringing activity.  The allegedly infringing

5    activity – i.e., the continued use of new versions of ZeroForum software to operate online

6    bulletin boards for Relynet customers, has been a shrinking part of Relynet's business for

7    years.  RelyNet earns money from other activities, in particular web hosting and data

8    center management, that have nothing to do with the allegedly infringing activity.  Adler

9    has not identified any documents or any witnesses that will enable him at trial to discern

10    among all of RelyNet's revenues which revenues are attributable to use of the ZeroForum

11    activity, directly or indirectly.  Consequently, he cannot meet even his threshold burden.

12           In particular, as discussed more fully in Defendants' motion in limine, Defendants

13    believe Adler cannot prove what portion of the proceeds of the sale to Internet Brands are

14    attributable to infringing activity.  According to the only competent testimony and

15    evidence in the case, those proceeds are attributable to the domain name, the trademark,

16    the web content, and the goodwill, but not the license of the software.  So Adler will not be

17    able to prove any damages based upon the sale to Internet Brands.

18           To the extent Adler is able to show any gross revenues from infringing activities,

19    Defendants expect the testimony will show that the actual profits are a relatively small

20    portion of the revenues.

21

22    VII.    RELYNET IS ENTITLED TO DECLARATORY RELIEF CONCERNING THE
                    OWNERSHIP OF THE COPYRIGHTS.

23

24           Adler asserts a "counterclaim" against Defendants for declaratory relief, seeking a

25    declaration regarding the ownership rights in the 2.0.6c and 2.1.2 versions of the software.

26    Defendants believe the evidence will show that these works are "works made for hire"

27    within the meaning of 17 U.S.C. section  201, and that DiCarlo's registrations of the

28

1   copyrights in these works are, therefore, invalid, and that Defendants are the rightful

2   owners of these versions of the software, and they seek a declaration to that effect.

3

4   VIII.   SECTION 502 CLAIM.

5        Finally, RelyNet also asserts a counterclaim against Adler under section 502 of the

6   California Penal Code for knowingly accessing its computer system without authorization

7   and destroying and sabotaging data so RelyNet would be unable to continue using

8   ZeroForum or service RelyNet customers that relied upon the ZeroForum software.

9        Under Section 502 of the California Penal Code, anyone who knowingly " accesses

10  and without permission adds, alters, damages, deletes, or destroys any data, computer

11  software, or computer programs which reside or exist internal or external to a computer,

12  computer system, or computer network" is guilty of a crime.  Cal. Penal Code §502(a)(4).

13  Section 502 also provides a civil remedy for the owner of the computer system that was

14  unlawfully accessed.  Cal. Penal Code §502(e).  The owner of the system may recover

15  compensatory damages, including compensation for "expenditure reasonably and

16  necessarily incurred by the owner or lessee to verify that a computer system, computer

17  network, computer program, or data was or was not altered, damaged, or deleted by the

18  access." Cal. Penal Code §502(e).

19       Defendants will prove at trial that Adler knowingly, and without authorization,

20  accessed RelyNet's computers in June and July 2005 and began deleting and disabling

21  computer files with the goal of preventing RelyNet from being able to use its ZeroForum

22  software if he left.  DiCarlo discovered what Adler was doing in July 2005, and through a

23  great amount of time and effort DiCarlo and RelyNet employee Layton Wedgeworth

24  investigated Adler's wrongdoing and changed access codes to prevent Adler from doing

25  more damage.  DiCarlo ultimately decided to terminate Adler's employment on August 1,

26  2005 because of what he had done.

27       At trial Defendants will introduce evidence of the out of pocket cost and cost in

28  terms of the reasonable value of the time spent investigating what Adler did and protecting

- 16 -

1  Relynet's computer systems from further wrongdoing.  Defendants' estimate the amount of

2  damages at a few thousand dollars.

3

4                                      **CONCLUSION**

5           For the foregoing reasons, judgment should be entered in favor of defendants on

6  Adler's copyright infringement claims.  Judgment should be entered in favor of DiCarlo

7  and RelyNet, as well, on their counterclaims against Adler for violation of Penal Code

8  section 502.  Finally, a judgment of declaratory relief should be entered in favor of

9  defendants, finding that Adler's registrations are invalid and that RelyNet is the proper

10  owner of the copyrights in the ZeroForum software.

11

12  DATED: January 15, 2010                    DAVIS & LEONARD LLP

13

14                                             __/s/Stephen L. Davis_____

15                                             Stephen L. Davis
                                               DAVIS & LEONARD, LLP
16                                             Attorneys for Defendants/Counterclaimants
                                               RelyNet, Inc. and Michael DiCarlo
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' TRIAL BRIEF