Patrick A. Fraioli, Jr. (SBN 191824)
  pfraioli@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Wendy Giberti (AZ SBN  020162)
Pro Hac Vice - date [7/30/09]
Internet Brands, Inc.
909 N. Sepulveda Blvd., 11th Floor
El Segundo, CA 90245
Telephone (310) 280-4365
Facsimile (310) 280-4951

Attorneys for Internet Brands, Inc.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN K. ADLER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RELYNET, INC., a California Corporation, MICHAEL DICARLO, an individual, INTERNET BRANDS, INC., a Delaware Corporation, INTERMEDIA OUTDOORS, INC., a Delaware Corporation, VORTEX MEDIA GROUP, INC., a Delaware Corporation, and DOES 1 through 50, inclusively,,<br><br>Defendant. | CASE NO. 2:08-CV-01333-JAMS-EFB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT INTERNET BRANDS, INC.'S MOTION FOR ATTORNEYS' FEES, SANCTIONS, AND COSTS**<br><br>Hearing Date:  March 3, 2010<br>Hearing Time:  9:30 a.m.<br>Courtroom:     6 |

## I.    INTRODUCTION

An award of attorneys' fees and full costs is appropriate in a copyright claim pursued wrongfully, vexatiously, and improperly.  Plaintiff and his attorneys pursued a copyright claim against Internet Brands with actual knowledge of the following facts: Internet Brands no longer used the copyrighted material, Plaintiff suffered no damages, Plaintiff's expert report reported no

IDOCS:13379.5:997818.1

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Ervin, Cohen
& Jessup LLP

1   copyright damages, and a judicial determination damages could never exceed $200. Plaintiff's

2   stated motivation was greed and publicity, and his attorneys governed themselves accordingly.

3   Plaintiff's attorneys engaged in unscrupulous behavior throughout litigation and especially after

4   the Court's ruling on damages. Plaintiff and his attorneys hoped to recover no less than

5   $1,300,000, simply because they perceived Internet Brands to be financially "low-hanging fruit"

6   from whom they could extort such a sizable settlement. The facts in this case warrant an award of

7   attorneys' fees, costs, and sanctions against Plaintiff and his attorneys, jointly and severally.

8

9   **II.    STATEMENT OF RELEVANT FACTS**

10      On February 15, 2007, Internet Brands purchased from RelyNet, Inc. a website,

11  www.honda-tech.com (the "Website")[1], which RelyNet operated on Zeroforum™ platform

12  software.[2] As part of the Website acquisition, RelyNet granted Internet Brands a written, paid up,

13  non-exclusive, perpetual license to use Zeroforum™.[3] From February 15, 2007, until September 9,

14  2008, RelyNet continued to host the Website.[4] Internet Brands only used Zeroforum™ on its own

15  servers from mid-August 2008, until November 18, 2008, when Internet Brands completed the

16  migration of the Website to its own software, vBulletin™.[5]

17      In September 2008, Internet Brands first communicated with counsel for Plaintiff, Mr.

18  Dustin K. Adler, with respect to Mr. Adler's competing ownership claim to the copyrighted

19  Zeroforum™ software. Internet Brands informed, in writing, Mr. Adler's counsel, Ms. Pam

20  Bertani, that Internet Brands was transitioning the Website from Zeroforum™ to its own

21  proprietary platform software, vBulletin™.

---

[1]    Docket #108, ¶1.
[2]    Docket #108, ¶2.
[3]    Docket #108, ¶3.
[4]    Docket #108, ¶4.
[5]    Docket #108, ¶5.

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1    **Five months later,** Mr. Adler's counsel responded by serving Internet Brands with a

2    copyright infringement lawsuit.[6]   As it turned out, suing Internet Brands after having actual

3    knowledge Internet Brands no longer used the copyrighted material would be only the first in a

4    very long list of vexatious tactics taken by Plaintiff and his attorneys.[7]

5        Not wanting to be pulled-in unnecessarily to protracted, expensive, and groundless

6    litigation, Internet Brands provided, again in writing, a lengthy plea to Plaintiff's counsel.[8]   In that

7    plea, Internet Brands explained painstakingly that it used the Zeroforum™ software pursuant to a

8    written license, the process by which it obtained the Zeroforum™ license, its limited previous use

9    of Zeroforum™, the destruction of all copies of Zeroforum™,[9] as well as the low commercial

10   value of the software based on objective market data.

11       In particular, Internet Brands revealed its methodology of valuing assets purchased, and,

12   more importantly, its use of unaffiliated third-party asset valuation.   Specifically, Internet Brands,

13   as a publicly traded company, had an obligation to, and did, retain an outside firm to allocate the

14   purchase price of the Website to the assets acquired.[10]   For this purpose, Internet Brands retained

15   Duff & Phelps, Inc. to conduct the evaluate and allocation.[11]   Duff & Phelps, like Internet Brands,

16   ultimately assigned an asset value of $0 to the Zeroforum™ software,[12] and communicated this

17   fact to Plaintiff's counsel at the outset.

18

19

20       > As you know, Internet Brands is an acquiror [sic]of websites. In its
21       > lifetime, the company has acquired hundreds of websites. As such, it
22       > has pretty strict, time-tested (and, more imporantly[sic], market-

---

[6]    Docket #30.
[7]    *See* Section II, below.
[8]    *See* Exhibit 1, Affidavit of Patrick A. Fraioli, Jr., counsel for Internet Brands, Inc., filed herewith, at paragraph 14, and Exhibit A, thereto (hereinafter, "PAF Affidavit, ¶__").
[9]    *Id.*
[10]   *Id.*
[11]   Docket #108 and Exhibit 1 thereto.
[12]   *Id. See also,* Exhibit A to PAF Affidavit.

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Ervin, Cohen
& Jessup LLP

1  tested) valuation metrics it consistently uses to determine the value
2  of the companies and other assets it acquires (as well as the tens of
   thousands it has refused to buy). Using those metrics, at the time
3  Honda-Tech.com was purchased, it was determined that all of the
   assets in the deal other than the software license added up to the
4  value of the purchase price. The software was valued at zero (no
   pun).

5  Similarly, after the transaction, because it is a public company and
6  as part of its ordinary accounting practices, Internet Brands had an
   independent valuation firm place valuations on the assets in the deal.
7  Once again, independently, the valuation firm placed a valuation on
   the software license of zero. Obviously, this third party evidence is
8  easily accessible.

9  Thus, the software, at the time, was unquestionably worth nothing to
10 my client, no matter whether you look at it from my client's
   perspective or from that of an independent, third party whose job it
11 is to value assets like this accurately. Actual damages are going to
   revolve around commercial marketplace value, which is going to be
12 reflected in license fees. If you try to establish "profits" or even
   revenue from ues [sic]of the software, you will always come back to
13 the fact that the software itself is useless and valueless as is
14 demonstrated above and below -- it is the website and related
   infrastructure that provides the value. Thus, any actual damages will
15 end up zeroing in (okay, there the pun was intended) on licensing
   revenue that could have been obtained and, as explained below and
16 as you undoubtedly know, licenses for your client's product are not
   desirable and therefore not profitable.[13]
17

18 Also, Internet Brands again explained to Plaintiff's counsel that it was no longer using the

19 Zeroforum™ software, had never used it for any other purpose, had never sold, assigned,

20 transferred, or sub-licensed it, and no longer had possession of it.

21

22 Because of all of these problems, the product actually had negative
   value to Internet Brands. Basically, it was more trouble than it was
23 worth, which is why the company literally threw it in the trash soon
   after it acquired the site. In mid-2007 the company decided to, and
24 did, purchase another bulletin board software product -- vBulletin --
   and instructions were issued to migrate Honda-Tech.com over to
25 vBulletin as soon as possible. (By the way, they never used
26

27 [13]  *Id.*

28

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1
2
3

> ZeroForum for any other site. Obviously.) Because this was a particularly busy time for the technology staff, the changeover took far longer than expected, but the maximum period of use is still slightly less than eighteen months.[14]

4

Finally, even at this early stage of litigation, it was clear Plaintiff could not recover much, if

5

anything, as against Internet Brands.

6
7
8
9

> Finally, ZeroForum itself can be licensed for between thirty nine dollars ($39.00) a month and one hundred ninety nine dollars ($199.00) a month. Use the highest possible license fee, multiply that by eighteen (18) months, and you get the maximum you could charge for a license in the open market -- less than three thousand six hundred dollars ($3,600.00).[15]

10    In an effort to escape the groundless claim, Internet Brands offered Plaintiff $5,000, one

11    and a half times what would have been Plaintiff's arguably best possible recovery against Internet

12    Brands.[16]   To induce this settlement offer from Internet Brands, Plaintiff's counsel repeatedly

13    promised a counter-offer and/or other response.[17]   None was ever received.[18]   Instead, Plaintiff

14    served Internet Brands with extensive discovery, persisted with claims for impoundment of a

15    product he <u>knew</u> Internet Brands no longer had, injunctive relief for a product he <u>knew</u> Internet

16    Brands no longer used, and damages he <u>never</u> incurred.[19]

17    Internet Brands proved to be correct in its assessment of Mr. Adler's damages.  Mr. Adler

18    and his attorneys never produced a single document, witness, or any other evidence, admissible or

19    otherwise, that Internet Brands' limited use of the Zeroforum™ software resulted in any damage

20

21

22
23
24
25
26
27
28

---

[14]    PAF Affidavit, ¶14, and Exhibit A, thereto.
[15]    PAF Affidavit, ¶15.
[16]    PAF Affidavit, ¶16.
[17]    PAF Affidavit, ¶17, 18, and 20, and Exhibits B, C, D, and E attached thereto.
[18]    PAF Affidavit, ¶23.
[19]    Plaintiff even testified at his deposition that he "abandoned" Zeroforum™, has not sold a single license for Zeroforum™ since 2005, has not otherwise profited in any way from the software, has no plans whatsoever to profit from it, and has begun development of a different platform software altogether.  *See* Docket #103, Deposition of Dustin K. Adler, page 92, lines 17-19; page 112, line 18-page 113, line 18; and page 213, lines 10-14.

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1   whatsoever to Plaintiff.   Indeed, Plaintiff and his counsel knew no such damages existed, as

2   evidences by Plaintiff's three Rule 26 disclosure statements, which provided:

3

4   • September 3, 2008: "Plaintiff has not yet completed a damages analysis."[20]

5   • July 2, 2009: "Plaintiff reserves the right to later disclose its computation of each
       category of damages at least until July 20, 2009, the date by which the parties have
6       Stipulated and agreed to file their respective expert reports."[21]

7   • August 17, 2009: "Plaintiff reserves the right to later disclose its computation of
       each category of damages at least until July 20, 2009, the date by which the parties
8       have Stipulated and agreed to file their respective expert reports."[22]

9
    Plaintiff's counsels' certification on August 17, 2009, that it would disclose damages no later than
10
    July 20, 2009, is demonstrative of the bad faith that characterized Plaintiff's entire representation.
11

12       And it only got worse from there.   During this same time, Plaintiff's own expert opined

13   that Plaintiff's damages, if any, were caused entirely by Defendants Michael DiCarlo and RelyNet,

14   and not by Internet Brands.

15           Based upon the information available to date the damages to the
               Plaintiff in this matter include his proportion shares of the sale
16             proceeds to Internet Brands, Inc.[23]

17
             The damages to the Plaintiff would include his proportionate interest
18           in any sales proceeds paid to or operating income of RelyNet, Inc.[24]

19   Yet, even this wasn't enough to deter Plaintiff and his counsel from continuing the improper and

20   despicable pursuit of Internet Brands.

21       Then on September 1, 2009, Internet Brands deposed Plaintiff.   Plaintiff's counsel used

22
    every improper tactic imaginable to impede, delay, and frustrate the defendants' fair examination
23
    of the Plaintiff.   Plaintiff's counsel injected over 100 objections, interruptions, and instructions not
24

25   _____
        [20]   Docket #108, Exhibit 4.
26      [21]   Docket #108, Exhibit 5.
        [22]   Docket #108, Exhibit 6.
27      [23]   Docket #108, Exhibit 3.
        [24]   Id.
28

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1   to answer; averaging such behavior every 3 ½ minutes throughout the deposition.[25] Worse still, the

2   impediments were predominantly objections in violation of Federal Rules of Civil Procedure, Rule

3   30(c)(2).  By way of example, Plaintiff's counsel repeatedly made speaking objections, which

4   often suggested the answer to the deponent.  When not making speaking objections, Plaintiff's

5   counsel instead launched string objections on various improper grounds, including but not limited

6   to:

7

8   • Relevance;

9   • Asked and answered;

10  • Argumentative;

11  • Mischaracterizes testimony;

12  • Calls for an expert opinion;

13  • Overbroad;

14  • Redundant;

15  • Calls for speculation;

16  • Calls for a legal conclusion;

17  • Because "I don't think you are entitled to that information;"

18  • Incomplete hypothetical; and

19  • Not a "good" question.[26]

Plaintiff's counsel's conduct at the deposition, which is revealed in the transcript lodged with the

Court, was consistent with their obstructionist and harassing tactics exhibited throughout this

litigation.

        Despite this obstruction, Internet Brands discovered the most telling fact underlying the

copyright claim, Plaintiff's admittedly improper motive.   Plaintiff smugly testified that he sued

Internet Brands, Intermedia, and Vortex Media Group simply because they are "high-profile",

---

[25]     Pursuant to Local Rules 56-260(e) and 5-133(j), a copy of Dustin K. Adler's deposition transcript was lodged with the Court at Docket #103 and provided to Judge Mendez.

[26]     Docket #103, Deposition of Dustin K. Adler (hereinafter, "Adler Depo").

IDOCS:13379.5:997818.1

7

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

deep-pocket companies,[27] which he considered financially "low-hanging fruit."[28] He also testified he was hoping to recover nearly $1,300,000.00 in damages.[29]

The following day, Internet Brands deposed Plaintiff's expert, Mr. Christopher Whittaker.[30] Consistent with his report, Mr. Whittaker testified that Plaintiff had not retained him to assess damages caused by Internet Brands and had no such knowledge, opinion, or other testimony regarding any alleged damages caused by Internet Brands.[31]

After these depositions and witnessing first-hand the chronic bad faith exhibited by Plaintiff and his counsel, it was clear that the case would end not through further discussion of logic and reason, but only by way of summary judgment. As a result, on October 7, 2009, Internet Brands, Inc. filed a motion for Summary Judgment and in the alternative a Motion for Summary Adjudication,[32] which resulted in a determination that Plaintiff could never recover more than $200 in statutory damages from Internet Brands.[33]

Even then, on December 4, 2009, Plaintiff and his attorneys again refused to dismiss Internet Brands and continued to maintain this action with only possibility of winning $200.[34] So on December 8, 2009, Internet Brands simply tendered to Plaintiff, through his counsel, the maximum amount he could hope to obtain at trial.[35] And yet still, on December 9, 2009, Plaintiff's counsel again refused to dismiss Internet Brands, insisted Internet Brands participate in the preparation of the Joint Pretrial Conference memo, a lengthy and complex document; travel to

---

[27]    Docket #103, Adler Depo, page 132, lines 7-8.
[28]    Docket #103, Adler Depo, page 224, line 23 through page 225, line 8.
[29]    Docket #103, Adler Depo, page 202, line 25 through page 203, line 4.
[30]    Docket #103, Deposition of Christopher Whittaker, Plaintiff's Expert.
[31]    *Id.*, at page 53, lines 1-15.
[32]    Docket #107.
[33]    Docket #140.
[34]    *See* Exhibit 2, Affidavit of Wendy Evelyn Giberti, counsel for Internet Brands, Inc., filed herewith, paragraph 24 (hereinafter, "WEG Affidavit, ¶___").
[35]    WEG Affidavit, ¶25.

Ervin, Cohen & Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1   and attend the Joint Pretrial Conference, and otherwise incur significant expense in preparing for

2   trial.[36]

3       And still, the saga continued Internet Brands again requested at the outset of the Joint

4   Pretrial Conference that counsel confer regarding dismissal of Internet Brands in last-ditch effort

5   to avoid incurring further fees. In open court, Mr. Peterson, counsel for Plaintiff, flatly refused the

6   request. After an extensive Joint Pretrial Conference, only then did Plaintiff's counsel finally

7   agree to dismiss Internet Brands.[37] This concession, of course, came after forcing counsel to travel

8   to and attend the Conference.

9   

10      Following the Joint Pretrial Conference, Internet Brands provided Plaintiff's counsel with

11  a Stipulation to Dismiss and a proposed dismissal Order, as agreed in court.[38] Inexplicably, on

12  December 21, 2009, Plaintiff's counsel **again** refused to dismiss Internet Brands.[39] Instead,

13  Plaintiff's counsel attempted to extort further by requesting Internet Brands sign a stipulated

14  judgment against it, agree to waive its claim for fees and costs, and stipulate to jurisdiction in the

15  Court of Appeals.[40]

16  

17      This behavior required Internet Brands to again turn to the Court for assistance. Internet

18  Brands incurred the expense of filing a Motion to Dismiss, and, given the lateness of Plaintiff's

19  shenanigans, an Ex Parte Application to Shorten the Time for hearing, an affidavit in support

20  thereof, and proposed orders on both.[41] The Court ultimately granted the Motion to Dismiss.[42]

21  ////

22  

---

23  [36]  WEG Affidavit, ¶26.
24  [37]  Docket #154.
    [38]  WEG Affidavit, ¶28.
25  [39]  WEG Affidavit, ¶30.
    [40]  WEG Affidavit, ¶30. In addition, Plaintiff's counsel ignores entirely that the
26  parties cannot stipulate to jurisdiction in the Court of Appeals.
    [41]  Docket #156 and 157, respectively.
27  [42]  Docket #161.

28  

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1    At the conclusion of this utterly frivolous lawsuit, Plaintiff caused Internet Brands to incur

2   $115,614.16 in costs and fees, all in an admitted attempt to extort money from "low hanging

3   fruit." But Mr. Adler did not do this alone. His attorneys, as set forth more fully below, are

4   equally culpable.

5   **III.    LEGAL ANALYSIS**

6
7       I.       **INTERNET BRANDS IS ENTITLED TO RECOVER COSTS INCURRED
                 IN THIS LITIGATION, INCLUDING ATTORNEYS' FEES, PURSUANT
                 TO 17 U.S.C. §505.**

8           A.   **The Court may award full costs to any party in a copyright action.**
9

10      Any party may recover full costs incurred in a copyright action.[43] Full costs includes both

11  taxable costs, as outlined by 28 U.S.C. §1920, and non-taxable other costs.[44] Defendant Internet

12  Brands incurred taxable costs, as enumerated by 28 U.S.C. §1920, in the amount of $2,150, and

13  $6,010.96 in non-taxable costs recoverable under 17 U.S.C. §505. These amounts have been

14
15  itemized and verified as required by 28 U.S.C. §1924, by verification at Exhibit 3.

16      With respect to the non-taxable costs, Internet Brands incurred significant expense,

17  $2,396.32, to present the summary judgment motion.    In addition, Internet Brands incurred

18  $406.57 in expenses incurred after this Court's summary adjudication ruling. These expenses

19  were primarily for appearance at the Joint Pretrial Conference, at which Internet Brands' presence

20  should never have been required. Defendant Internet Brands respectfully requests this Court

21  grant it an award of full costs incurred in this action, in the amount of $8,160.96, jointly and

22  severally against Plaintiff and his attorneys.[45]

23

24

25      [43]    17 U.S.C. §505.
        [44]    *Twentieth Century Fox Film Corp. v. Entertainment Distrib.*, 429 F.3d 869 (9th Cir.
26  2005)(holding, "district court may award otherwise non-taxable costs, including those that lie
    outside the scope of. [28 U.S.C.] §1920, under §505.").
27      [45]    The basis for joint and several liability is discussed in Section II and III, below.
28  ─────────────────────────────────────────────
    IDOCS:13379.5:997818.1                    10

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

**B.  The prevailing party may recover reasonable attorneys' fees incurred in a copyright claim.**

### 1.  Determination of the "prevailing party."

The prevailing party in a civil action for copyright infringement may recover reasonable attorneys' fees incurred in the action.[46]  The prevailing party is defined as one who prevails in whole or in part in the subject action.[47]  As a matter of law, the stipulation or voluntary dismissal of copyright claims confers prevailing party status on defendants.[48]  Even an infringing defendant is determined to have prevailed in whole or in part where infringement was innocent, damages were minimal, and where the copyright holder wrongfully pursued the claim.[49]

This Court never reached the issue of whether Internet Brands infringed upon Plaintiff's copyrights.  But Plaintiffs did agree to dismiss the copyright claims against Internet Brands, by stipulation in open court, thereby conferring prevailing party status upon Internet Brands. In addition, the Court granted Internet Brands' Motion for Summary Adjudication, in part, and found the following as a matter of law: (1) Plaintiff's actual damages and infringer's profits are $0;  (2) Plaintiff cannot meet his burden to prove that Internet Brands' infringement, if any, was willful; (3) Internet Brands' infringement, if any, was innocent; and (4) Plaintiff  cannot recover statutory damages pursuant to §504(a)(2) and 17 U.S.C. 504(c)(2) in excess of $200.  Therefore, Internet

////

---

[46]    17 U.S.C. §505.

[47]    The United States District Court, Eastern District of California, Local Rule 293

[48]    *Cadkin v. Loose*, 569 F.3d 1142 (9th Cir. 2009)(citing *Buckhannon v. Board & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

[49]    *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F.Supp. 740 (S.D.N.Y. 1988); *see also*, *Shapiro, Bernstein, and Co. v. 4636 S. Vermont Ave, Inc.*, 367 F.2d 236 (9th Cir. 1966)(court concluded even though infringement had been established, infringing party deemed prevailing party because plaintiff did not establish entitlement to recovery)(emphasis added); *Boisson v. Banian Ltd*, 280 F.Supp.2d 10 (E.D.N.Y. 2003)(finding party need not be successful on all claims to be deemed "prevailing party" under Copyright Act, and may be deemed prevailing party if it "succeeds on a significant issue in litigation that achieves some benefits that the party sought in bringing suit.").

Ervin, Cohen
& Jessup LLP

1 Brands is the prevailing party, even if it had infringed. For these reasons, Internet Brands is the

2 prevailing party and is entitled to an award of reasonable attorneys' fees.

### 2. Determination of discretionary right to fees

4 After the Court determines the prevailing party, it must then assess whether, in its

5 discretion, the prevailing party should recover its reasonable attorneys' fees. The court's decision

6 is guided by "a number of equitable factors, including the non-prevailing party's frivolousness,

7 motivation, objective unreasonableness (both in the factual and legal components of a case),

8 together with the need in particular circumstances to advance considerations of compensation and

10 deterrence."[50] One of the most important factors is unreasonableness.[51]

11 In *Baker v. Urban Outfitters*,[52] the District Court discussed at length the reasonableness

12 standard, and found plaintiff's pursuit of a copyright claim unreasonable where: (1) the defendant

13 has ceased use of the copyright material prior to the commencement of litigation; (2) the alleged

14 infringement was minor; and (3) the evidence revealed plaintiff's motive was improper.[53]

> Thus, rather than pursuing resolution of a fairly minor dispute in
> good faith, the record suggests that [plaintiff] (and his counsel) filed
> and maintained this suit in an attempt to extract a significant
> payment from perceived 'deep pocketed' defendants (and in an
> attempt to garner publicity for [plaintiff's] agent and his lawyer).[54]

19 All three of these factors are present in this case.

### a. Plaintiff and his counsel knowingly instituted this litigation after Internet Brands ceased all use of the copyrighted material.

22 Internet Brands first learned of Plaintiff's claim to the copyrighted material on or after

23 September 15, 2008. Internet Brands immediately wrote to Plaintiffs' counsel, informing them of

---

50    *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006).
51    *Id.*
52    *Id.*
53    *Id.* at 357-358.
54    *Id.*

IDOCS:13379.5:997818.1

12

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1   its license, and that Internet Brands was in the process of migrating off the software and onto other

2   proprietary software.  As promised, on November 18, 2008, Internet Brands ceased all use of the

3   copyrighted material and destroyed all copies of the software.[55]

4   Nonetheless, on February 13, 2009, Plaintiff commenced this action against Internet

5   Brands requesting damages, injunctive relief and impoundment.  Plaintiff could not have been

6   motivated to file this action to get an injunction or impoundment, because those claims were moot.

7
8   **b.    The alleged infringement was minor, at best.**

9   Plaintiff and his attorneys knew Internet Brands used the copyrighted material for a period

10  of time no greater than four months, and had an interest in the use of the software for a period no

11  greater than 18 months.  Internet Brands realized zero profit through the use of the copyrighted

12  material, and the infringement if any, is minor.[56]

13  Plaintiff and his attorneys knew the software was and is worthless. Plaintiff testified he

14  doesn't even use it anymore, has no intention to use it, hasn't sold a single license for it since

15  2005, and is currently drafting a wholly new platform software.[57]  Plaintiff and his attorneys knew

16
17  Internet Brands derived its revenue from the Website and not the platform upon which it ran.

18  Plaintiff and his attorneys knew Internet Brands did not use Zeroforum™ for any other purpose

19  than the Website.  Given all that knowledge, Plaintiff and his attorneys knew or should have

20  known the actual damages and infringer's profits would be very minor, if not $0.

21  In addition, as the litigation progressed they became unquestionably aware the actual

22  damages and infringer's profits were $0.  The Plaintiff's own expert provided a written report

23
24

---

25      [55]    Docket #108, ¶5.
        [56]    Docket #140.
26      [57]    Interestingly, Plaintiff now operates his own website, www.htuner.com, which
27  purports to compete with www.honda-tech.com, and even his own site doesn't run on the faulty
        Zeroforum™ software.
28

Ervin, Cohen
& Jessup LLP

IDOCS:13379.5:997818.1

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1    opining that the damages, if any, were caused by RelyNet and/or Michael DiCarlo. No evidence

2    to the contrary was ever provided.

3        Based on Internet Brands own calculation of Plaintiff's maximum damages, giving

4    Plaintiff the benefit of all doubt before any evidence was taken, and under the best set of

5    circumstances, Plaintiff could never have recovered more than $3,600 in damages. And Internet

6    Brands offered Plaintiff $5,000 to settle, just to avoid the expense of litigation.

7    

**c.**    <u>**The evidence reveals that Plaintiff's motives were**</u>

8    <u>**improper**</u>.

9        Finally and most importantly, Plaintiff and his counsel have demonstrated an evil motive

10   in pursuing this litigation. Plaintiff testified he is suing Internet Brands for copyright infringement

11   because they are a "high-profile," deep-pockets company and financially "low-hanging fruit." He

12   and his attorneys are no different from the "deep pocket" seekers in *Baker*. Plaintiff and his

13   counsel have been made aware repeatedly that the claims are without merit. Plaintiff's own expert

14    

15   opines that Plaintiff's damages, if any, were caused by Defendants DiCarlo and RelyNet, not

16   Internet Brands. Even after Plaintiff's own expert report was served, Plaintiff still refused to

17   dismiss his claims against Internet Brands. Plaintiff's claims against Internet Brands are nothing

18   more than an extortion attempt at a company with perceived "deep pockets." As such, Internet

19   Brands is entitled to recover all attorneys' fees and costs incurred.

20   

**3.**   <u>**Determination of Reasonableness of Fees**</u>

21    

22       If the Court determines that an award of attorneys' fees is appropriate, the Court must then

23   determine the reasonableness of the fees sought. "A reasonable attorney fee is the number of

24   hours and the hourly rate that would be billed by 'reasonably competent counsel.'"[58] A reasonably

25

26

27        [58]    *Venegas v. Mitchell*, 495 U.S. 82, 86, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).

28   IDOCS:13379.5:997818.1

14

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

competent counsel bills a reasonable number of hours at reasonable hourly rate.[59]  The Court must first assess the reasonableness of the number of hours spent and then the reasonableness of the hourly rate charged.[60]  In assessing the reasonableness of the number of hours spent, "the court must determine whether the requested number of hours is greater than, less than, or the same number of hours that reasonably competent counsel would have billed…."[61]  Similarly, in assessing the reasonableness of the hourly rate charged the Court may look to the prevailing market rate charged by reasonably competent attorneys.[62]

In this case, defendant Internet Brands' counsel collectively billed 630.05 hours over the course of approximately one year of litigation.  A close look at the number of hours billed reveals the time spent is commensurate with the time a reasonably competent attorney would have billed. In particular, the number of hours billed, timekeeper, and hourly rate was as follows:

| TIMEKEEPER | HOURLY RATE | HOURS BILLED | TOTAL |
|---|---|---|---|
| Wendy Evelyn Giberti | $100.00 | 371.00 | $37,100.00 |
| Patrick A. Fraioli, Jr. | $395.00 | 47.00 | $18,565.00 |
| Patrick A. Fraioli, Jr. | $400.00 | 90.5 | $36,200 |
| Patrick A. Fraioli, Jr. | $450.00 | 6.9 | $3,105.00 |
| Lauren Katunich | $300.00 | 52.6 | $15,780.00 |
| Kelly Scott | $470.00 | .2 | $94.00 |
| Allan Cooper | $400.00 | .3 | $150.00 |
| Karina Sterman | $390.00 | 5.7 | $2,223.00 |

[59]  *Yahoo!, Inc. v. Net Games, Inc.*, 329 F.Supp.2d 1179 (N.D. Cal. 2004).
[60]  *Id.*
[61]  *Id.*, 329 F.Supp.2d at 1184.
[62]  *Microsoft Corp. v. Evans*, 2007 WL 3034661 (E.D. Cal.).

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Ervin, Cohen
& Jessup LLP

| | | | |
|---|---|---|---|
| David Bricker | $370.00 | 19.75 | $7,307.50 |
| Rusty Selmont | $250.00 | 31.7 | $7,925.00 |
| Charlene Emerson * | $225.00 | 4.4 | $990.00 |
| *paralegal | **TOTALS** | **630.05** | **$129,439.50** |

With respect to the hourly rates charged, the rates range from $100 to $400. The majority of the work was performed by Wendy Evelyn Giberti, who appeared pro hac vice for Internet Brands. Internet Brands retained Ms. Giberti for her ability to manage efficiently copyright infringement claims. Ms. Giberti has over ten years experience practicing law, and significant experience in copyright, trademark, and intellectual property claims. Ms. Giberti charged Internet Brands a severely discounted rate of $100 per hour, which is well below both her regular hourly rate of $325 per hour and the prevailing market rate for a reasonably competent attorney.

Mr. Fraioli's rate was $400 per hour. Mr. Fraioli has been practicing law for over 20 years, with substantial experience in civil litigation. Mr. Fraioli also employed other attorneys to assist him in the representation of Internet Brands, including those listed above, along with their respective hourly rates. As set forth in Mr. Fraioli's affidavit, these rates are reasonable for the prevailing market and for the representation actually provided.

**IV.    INTERNET BRANDS IS ENTITLED TO AN AWARD AGAINST PLAINTIFF'S COUNSEL FOR ATTORNEYS' FEES AND/OR AN ADDITIONAL OR ALTERNATE MONETARY AWARD INCURRED IN THIS LITIGATION PURSUANT TO 28 U.S.C. §1927.**

28 U.S.C. §1927 allows the court to award full costs and attorneys' fees caused by attorneys' unreasonable and vexatious conduct.[63] The applicable statute "imposes an obligation

---

[63]    28 U.S.C. §1927

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Ervin, Cohen
& Jessup LLP

1  on attorneys throughout the entire litigation to avoid dilatory tactics."[64]  Such an award against the

2  attorney is appropriate when, "the attorneys' actions are so completely without merit as to require

3  the conclusion that they must have been undertaken for some improper purpose such as. . . to

4  harass, delay the proceedings, or for otherwise inappropriate reasons."[65]  In the Ninth Circuit, the

5  Court must find that the attorney acted with subjective bad faith, "which is present when an

6  attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the

7

8  for the purpose of harassing an opponent.'"[66]

9      To demonstrate Plaintiff's counsels' recklessness and bad faith, Internet Brands reminds

10  and informs this Court that Plaintiff's counsel did the following:

11          •    February 13, 2009: Filed the Amended Complaint after actual knowledge

12  Internet Brands no longer used the copyrighted material;

13          •    March 27, 2009: Maintained the claim for injunction and impoundment,

14  despite actual knowledge Internet Brands no longer possessed or used the copyrighted

15  material;

16          •    April 24, 2009: Engaged in ex parte communications with Internet Brands

    representatives, known to be represented by counsel;[67]

17          •    July 20, 2009: Deadline for Expert Witnesses: Maintained this action even

18  after July 20, 2009, when Plaintiff's own expert opined damages, if any, were caused by

19  Defendants RelyNet, Inc. and/or Michael DiCarlo;

20          •    August 17, 2009: Signed a disclosure statement, promising damages

21  calculations by July 20, 2009;

22          •    September 1, 2009: Violated Fed. R. Civ. P., Rule 30(c)(2).  Expanded the

23  time and cost of the Plaintiff's deposition by exhibiting bad faith and vexatious conduct

    at the deposition of Dustin Adler, in that Plaintiff's counsel injected over 100 objections

24

---

25  [64]    *United States v. International Bd. Of Teamsters*, 948 F.2d 1338, 1345 (2nd Cir.
    1991).

26  [65]    *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2nd Cir. 1986).

27  [66]    *Rothery v. Blanas*, 2009 WL 4048624 (E.D. Cal.).

28  [67]    *See* PAF Affidavit, ¶19, and Exhibit D thereto.

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

and instructions, incorrectly cited alleged authority, and otherwise delayed and expanded the deposition unnecessarily;

- September 2, 2009: Violated Federal Rules of Civil Procedure, Rule 30(c)(2). Expanded the time and cost of the Plaintiff's Expert's deposition by exhibiting bad faith and vexatious conduct by objecting improperly and unnecessarily.

- August 31 - September 2, 2009: Violated Federal Rules of Civil Procedure, Rule 37(a)(1) and Local Rule 37-251(b). Exhibited bad faith by preparing Motion to Compel and filing same within 48, during which time Plaintiff's counsel attended in person depositions with counsel for Internet Brands and never once mentioned the Motion, attempt to confer, or otherwise act in good faith to resolve the discovery dispute.[68]

- September 4, 2009: Discovery Deadline: Maintained this action even though at the close of discovery, they had never produced a single piece of evidence of damages caused by Internet Brands;[69]

- September 16, 2009: Ignored further communications from Internet Brands' counsel regarding an attempt to discuss the Motion to Compel and request to withdraw the Motion;[70]

- September 28, 2009: Filed second Motion to Compel, , after the close of discovery, and again in violation of the Federal Rules of Civil Procedure, Rule 37(a)(1) and Local Rule 37-251(b), in that it came with no effort to confer prior to filing;[71]

- October 13, 2009: Withdrew the Motion to Compel only after receiving Internet Brands' response and request for sanctions and attorneys' fees, and stated, "On Friday, October 9, 2009 Plaintiff's counsel was able to confirm with Plaintiff's expert, Chris Whittaker, that, while such additional information would be useful, a damages assessment can be completed without the additional documentation.";[72]

- October 21, 2009: Opposed the entry of summary judgment in favor of Internet Brands despite complete lack of any damages evidence against Internet Brands,

---

[68] Docket #95 and 97.
[69] Docket 13.
[70] See Exhibit 4 Affidavit of Lauren Katunich, paragraph 5, filed herewith, (hereinafter, "Katunich Affidavit, ¶___").
[71] Docket #95 and 97.
[72] Docket #113.

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Ervin, Cohen
& Jessup LLP

without complying with Fed. R. Civ. P., Rule 56(c), and with no good faith basis for opposing the motion;

- November 18, 2009: Misrepresented to this Court that summary judgment was premature because Plaintiffs did not have evidence sufficient to calculate damages (cf. October 13, 2009 signed statement – above – directly to the contrary);

- December 4, 2009: Refused to dismiss Internet Brands and maintained this action against Internet Brands even after the determination that damages could not exceed $200;

- December 9, 2009: Refused to dismiss Internet Brands and maintained this action against Internet Brands even after the Internet Brands tendered to Plaintiff payment in the amount of $200, the maximum amount Plaintiff could ever hope to receive at trial;

- December 4-9, 2009: Caused Internet Brands to participate in the drafting of the Joint Pretrial Statement;

- December 16, 2009: Caused Internet Brands to incur time and expense of travelling to and attending the Joint Pretrial Conference;

- December 21, 2009: Refused to dismiss Internet Brands, and continued to maintain this action against Internet Brands, despite stipulation in open court to dismiss Internet Brands;

Plaintiff's counsel should never have expanded this case to include Internet Brands. Plaintiff's counsel was aware, prior to filing the complaint against Internet Brands, that Plaintiff's claim was without merit. At every opportunity, Plaintiff's counsel ignored evidence, its own expert opinions, and well-settled law. Plaintiff's counsel acted vindictively, wantonly, and vexatiously. If ever a case was ripe for an award of attorneys' fees pursuant to 28 U.S.C. §1927, it is this one. Internet Brands requests an award of all costs in fees incurred in this litigation, as all were excessive and charged only by the vexatious behavior of Plaintiff's counsel.

In the alternative, Internet Brands requests all costs and fees incurred after July 20, 2009, the date Plaintiff's own expert opined that Internet Brands had not caused Plaintiff any damages,

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

1  should be allocated to Plaintiff's counsel.  It was grossly apparent at that point that Plaintiff could

2  not prove any damages against Internet Brands, yet counsel persisted in pursuing Internet Brands.

3  The number of hours spent since July 20, 2009, is as follows:

| TIMEKEEPER | HOURLY RATE | HOURS BILLED | TOTAL |
|---|---|---|---|
| Wendy Evelyn Giberti | $100.00 | 343.25 | $34,325.00 |
| Patrick A. Fraioli, Jr. | $395.00 | 31.9 | $12,760.00 |
| David Bricker | $370 | 15.5 | $5,735.00 |
| Lauren Katunich | $300.00 | 42.8 | $12,840.00 |
| Charlene Emerson* | $225.00 | 3.9 | $877.50 |
| Rusty Selmont | $250.00 | 31.7 | $7,925.00 |
| Karina Sterman | $390.00 | 5.7 | $2,223.00 |
| *Paralegal | TOTALS | 474.75 | $76,685.50 |

There is little doubt Plaintiff's counsel is entirely responsible for all fees incurred after

November 18, 2009, the date of the summary judgment ruling.  Plaintiff's counsel had absolutely

no legitimate purpose whatsoever to keep Internet Brands involved in this litigation after the court

determined Plaintiff's damages could not exceed $200.  Internet Brands incurred the cost of

participating in the Joint Pretrial Statement and traveling to and appearing at the Joint Pretrial

Conference. Worse still, Internet Brands then incurred the costs of filing a last minute Motion to

Dismiss, Application to Shorten Time, and affidavits in support thereof as a direct result of

vexatious conduct by Mr. Glenn Peterson in reneging on his promise to dismiss Internet Brands.

There is no conclusion that can be reached except the conclusion that Plaintiff's counsel was

acting vindictively, vexatiously, and wantonly in their behavior toward Internet Brands and this

Court.  The number of hours spent since November 18, 2009, is:

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

| TIMEKEEPER | HOURLY RATE | HOURS BILLED | TOTAL |
|---|---|---|---|
| Wendy Evelyn Giberti | $100.00 | 115.5 | $11,550.00 |
| Patrick A. Fraioli, Jr. | $395.00 | 4.4 | $1,738.00 |
| David Bricker | $370 | .5 | $185.00 |
| Rusty Selmont | $250.00 | 31.7 | $7,925.00 |
| | **TOTALS** | 152.10 | $21,398.00 |

**V.   INTERNET BRANDS IS ENTITLED TO RECOVER ATTORNEYS' FEES AND ADDITIONAL OR ALTERNATE MONETARY AWARD INCURRED IN THIS LITIGATION PURSUANT TO THIS COURT'S INHERENT AUTHORITY TO AWARD COSTS AND FEES AS A SANCTION.**

All courts have the firmly established power to award sanctions as necessary to maintain the proper conduct of the case and the courtroom.[73] The purpose of this power is not only to control the relationship of the parties and their counsel to the court but to make whole the prevailing party for "expenses caused by his opponent's obstinacy."[74] And that power includes the power to assess attorneys' fees against counsel.[75] Pursuant to its inherent power to sanction, the court may award fees in several circumstances, including, "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[76] The standard for awarding fees against

---

[73]   *Young v. United States ex rel. Vuitton et fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

[74]   *Ibid.* (quoting *Hutto v. Finney*, 437 U.S. 678, 689, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978).

[75]   *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

[76]   *Chambers v. Nasco, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed2d 27 (1991)(quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-259, 95 S.Ct. 1612, 1622-1623, 44 L.Ed.2d 141 (1975)).

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Ervin, Cohen & Jessup LLP

1  counsel under the court's inherent authority is the same standard used to award fees pursuant to 28

2  U.S.C. §1927.[77]

3      The Plaintiff admitted under oath that admitted his motivation was not to protect any

4  viable interest in a copyright, but to pursue money from "low hanging fruit" defendants.

5  Plaintiff's counsel's motivation and tactics were equally nefarious. Plaintiff's attorneys, at every

6  turn, pursued a claim they knew to be without merit, expanded litigation, increased costs of

7

8  defense, and unnecessarily caused Internet Brands to incur fees and expenses for no legitimate

9  purpose. Plaintiff's counsel repeatedly engaged in dilatory conduct that could have no purpose

10  other than to harass and extort.

11      For example, the actions set forth above demonstrate Plaintiff's counsel behaved poorly,

12  including filing the First Amended Complaint after receive actual knowledge Internet Brands no

13  longer used the copyrighted material. They refused to dismiss Internet Brands even after

14  Plaintiff's own expert opined that damages lay against RelyNet and not Internet Brands. They

15  refused to dismiss after the Court's that damages could not exceed $200. They refused to dismiss

16

17  Internet Brands after Internet Brands tendered to them the most Plaintiff could ever hope to win at

18  trial. They refused to dismiss Internet Brands after they'd already agreed to dismiss! Their

19  actions groundlessly wasted this Court's time, the other party's time and resources, and Internet

20  Brands' time and resources. This very type of conduct falls squarely within the Court's inherent

21  power to sanction counsel and their client.

22      Plaintiff and his counsel have been made aware repeatedly that the claims are without

23  merit. Plaintiff's own expert opines that Plaintiff's damages, if any, were caused by Defendants

24  DiCarlo and RelyNet, not Internet Brands. Even after Plaintiff's own expert report came out,

25

26  Plaintiff still refused to dismiss his claims against Internet Brands. Plaintiff's claims against

27         [77]   *Agee v. Paramount Commc'ns*, 869 F.Supp. 209, 212 (S.D.N.Y. 1994).

28  IDOCS:13379.5:997818.1

Ervin, Cohen
& Jessup LLP

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Internet Brands are nothing more than an extortion attempt at a company with perceived "deep pockets." As such, Internet Brands is entitled to recover attorneys' fees and costs incurred, and to have that award issued jointly and severally against Mr. Adler and his counsel of record, Ms. Pam Bertani, Mr. Glenn Peterson, and Mr. John Costello.

## VI.    INTERNET BRANDS REQUESTS POST-JUDGMENT INTEREST AT THE STATUTORY RATE PURSUANT TO 28 U.S.C. §1961

28 U. S.C. §1961 allows the recovery of post-judgment interest.

> Interest shall be allowed on any money judgment in a civil case recovered in a district court.
> . . .

> Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

Defendant Internet Brands requests this Court grant statutory interest on any award of attorneys' fees, costs, sanctions, and/or other monetary award issued in its favor.

## VII.    CONCLUSION

Ms. Bertani, one of Mr. Adler's attorneys in this case, once chastised the attorneys in this case, arguing they all  should be "held to a higher standard."  We now seek to hold her to her word.  She was right.  The attorneys have an obligation to assess constantly the merits of a claim, position, or argument they advance.  Ms. Bertani and her cohorts failed at every development to hold themselves to this high standard.  Instead, they thumbed their noses at the Federal Rules of Civil Procedure, the Federal Rules of Evidence, opposing counsel, and this Court.  This behavior compounded the time and expense necessary to extract Brands from this groundless litigation.  In doing so, Internet Brands incurred $115,614.16 in attorneys' fees and costs.[78]

---

[78]    This figure does not include the total fees incurred to prepare this Application and

1      Plaintiff's real complaint is nothing more than a dispute between two old friends.

2  Unfortunately, Internet Brands is a successful corporation, whose "deep pockets" proved too

3  irresistible for Plaintiff and his lawyers.  Mr. Adler and his counsel never expected this case to go

4  before a judge or a jury.  If they had, they would have prepared damages calculations, disclosed

5  evidence of damages, and otherwise prepared properly to meet the burden of proof.  None of those

6  things happened because Mr. Adler and his attorneys always thought this case would settle for

7  well into six figures if they were obstinate enough for long enough.

8

9      Mr. Adler and his counsel refused reason and logic at every opportunity.  They

10  unjustifiably maintained this action even after their own expert opined that Internet Brands had not

11  caused any damages; after they were unable to calculate any damages, and after it was clear they

12  could not recover statutory damages in excess of $200.  There is no acceptable reason for causing

13  Internet Brands to incur a single dollar in fees after learning Plaintiff could not recover damages in

14  excess of this limited amount.  Mr. Adler's counsel repeatedly exposed themselves as belligerent,

15  obstinate, and disrespectful.  They grossly increased the costs of litigation, wasted this Court's

16  time, and expanded unnecessarily what is essentially a breach of contract claim between old

17  friends.

18

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25

26

27  supporting documents, or any fees incurred hereafter.  Internet Brands reserves its right to seek those fees, if appropriate.

28

IDOCS:13379.5:997818.1

24

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Internet Brands requests this Court enter an award of attorneys' fees, sanctions, or other monetary award that would make Internet Brands whole, deter the Plaintiff and his attorneys' from future such conduct, and protect the integrity of the judicial system from this type of litigation abuse.

DATED: January 22, 2010                    ERVIN COHEN & JESSUP LLP


By:    _____/s/_____
       Patrick A. Fraioli
       David Bricker
       Wendy Giberti
       Attorneys for Defendant Internet Brands

DEFENDANT INTERNET BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Ervin, Cohen & Jessup LLP

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION                                                                    1

II.     STATEMENT OF RELEVANT FACTS                                     2

III.    LEGAL ANALYSIS                                                                10

        INTERNET BRANDS IS ENTITLED TO RECOVER COSTS INCURRED
        IN THIS LITIGATION, INCLUDING ATTORNEY'S FEES, PURSUANT TO
        17 U.S.C. §505.

        A.      The Court may award full costs to any party in a copyright action.          10

        B.      The prevailing party may recover reasonable attorneys' fees incurred
                In a copyright claim                                                                  11

                1. Determination of the "prevailing party."                               11
                2. Determination of discretionary right to fees                        12
                3. Determination of Reasonableness of Fees                           14

IV.     INTERNET BRANDS IS ENTITLED TO AN AWARD AGAINST PLAINTIFF'S
        COUNSEL FOR ATTORNEYS' FEES AND/OR AN ADDITIONAL OR ALTERNATE
        MONETARY AWARD INCURRED IN THIS LITIGATION PURSUANT TO
        28 U.S.C. §1927                                                                    16

V.      INTERNET BRANDS IS ENTITLED TO RECOVER ATTORNEYS' FEES AND
        ADDITIONAL OR ALTERNATE MONETARY AWARD INCURRED IN THIS
        LITIGATION PURSUANT TO THIS COURT'S INHERENT AUTHORITY TO
        AWARD COSTS AND FEES AS A SANCTION                                      21

VI.     INTERNET BRANDS REQUESTS POST-JUDGMENT INTEREST AT THE
        STATUTORY RATE PURSUANT TO 28 U.S.C. §1961.                    23

VII.    CONCLUSION                                                                    23

ERVIN COHEN & JESSUP LLP

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Twentieth Century Fox Film Corp. v. Entertainment Distrib.*, 429 F.3d 869 (9th Cir. 2005)     10

[1]*Cadkin v. Loose*, 569 F.3d 1142 (9th Cir. 2009)     11

*Buckhannon v. Board & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).     11

*Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F.Supp. 740 (S.D.N.Y. 1988);     11

*Shapiro Bernstein, and Co. v. 4636 S. Vermont Ave, Inc.*, 367 F.2d 236 (9th Cir. 1966)     11

*Boisson v. Banian Ltd,* 280 F.Supp.2d 10 (E.D.N.Y. 2003)     11

*Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006).     12,14

*Venegas v. Mitchell*, 495 U.S. 82, 86, 110 S.Ct. 1679, 109 l.Ed.2d 74 (1990)     14

*Yahoo!, Inc. v. Net Games, Inc.* , 329 F. Supp.2d 1179 (N.D. Cal. 2004)     15

*Microsoft Corp. v. Evans*, 2007 WL3034661 (E.D. Cal.)     15

*United States v. International Bd. Of Teamsters*, 948 F.2d 1338, 1345 (2nd Cir. 1991)     17

*Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2nd Cir. 1986)     17

*Rothery v. Blanas*, 2009 WL 4048624 (E.D. Cal.)     17

*Young v. United States ex rel. Vuitton et fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).     21

*(Hutto v. Finney*, 437 U.S. 678, 689, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978)     .21

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).     21

*Chambers v. Nasco, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed2d 27 (1991)     21

*(Alyeska Pipeline Serv. Co. v. Wildernes Soc'y*, 421 U.S. 240, 258-259, 95 S.Ct. 1612, 1622-1623, 44 L.Ed.2d 141 (1975)).     21

*Agee v. Paramount Commc'ns, 869 F.Supp. 209, 212 9S.D.N.Y. 1994).*     22

ERVIN COHEN & JESSUP LLP

1

## STATUTES

2   28 U.S.C. §1920                                                          10

3   17 U.S.C. §505                                                           10

4   28 U.S.C. §1924                                                          10

5   28 U.S.C. §1927                                                    16, 19,22

6   28 U.S.C. §1961                                                          23

7

8

## RULES

9

USDC Eastern District of California Local Rules 56-260(e) and 5-133(j)        7

10  USDC Eastern District of California, Local Rule 293                        11

11  USDC Eastern District of California Local Rules 37-251(b)                7,18

12
    Federal Rules of Civil Procedure, Rule 30(c)(2)                           17

13
    Fed. R. Civ. P., Rule 30(c)(2)                                         17,18

14
    Fed. R. Civ. P., Rule 37(a) (1)                                          18

15
    Fed. R. Civ. P., Rule 56(c)                                              19

16

17

18

19

20

21

22

23

24

25

26

27

28