John P. Costello, Esq. (California State Bar No. 161511)
Pamela W. Bertani, Esq. (California State Bar No. 182672)
**COSTELLO LAW CORPORATION**
331 J Street, Suite 200
Sacramento, California 95814
Telephone No.: (916) 441-2234
Fax No: (916) 441-4254

Glenn W. Peterson, Esq. (California State Bar No. 126173)
**MILLSTONE PETERSON & WATTS, LLP**
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
Telephone: (916) 780-8222
Fax No: (916) 780-8775

Attorneys for Plaintiff/Counterdefendant
Dustin K. Adler

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN K. ADLER, an individual, | Case No. 2:08-CV-01333-JAM-EFB |
| Plaintiff, | **PLAINTIFF'S BENCH BRIEF RE: JOINT AUTHORSHIP ISSUE** |
| vs. | |
| RELYNET, INC., a California Corporation, MICHAEL DICARLO, an individual, INTERNET BRAND, INC., a Delaware corporation, INTERMEDIA OUTDOORS, INC., a Delaware corporation, VORTEX MEDIA GROUP, INC., a Delaware corporation, and DOES 1 through 50, inclusively, | Trial Date: January 25, 2010<br>Time: 9:00 a.m.<br>Courtroom: 6<br><br>Hon. John A. Mendez |
| Defendants. | |
| RELYNET, INC., a California Corporation, MICHAEL DICARLO, an individual, and DOES 1 through 50, inclusively, | |
| Counterclaimants, | |
| vs. | |
| DUSTIN K. ADLER, an individual, | |
| Counterdefendant. | |

1

## DEFENDANT'S JOINT AUTHORSHIP CLAIM IS UNSUPPORTABLE

Should the defendants get past the problem with the fact that they have failed to plead joint authorship as an affirmative defense, the claim is legally unsupportable, and has no factual support in the record by which a reasonable jury could decide it.

Federal Rule of Civil Procedure 8(a) and (c) provide that a defendant's failure to raise an "affirmative defense" in his answer effects a waiver of that defense. See *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir.2005); 5 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1278 (2d ed.1990). Defendants' answer contains neither the affirmative defense of implied license nor joint authorship. As an affirmative defense to copyright infringement, implied license must be pleaded pursuant to Fed.R.Civ.P. 8. See *Oddo v. Ries*, 743 F.2d 630, 634 & n. 6 (9th Cir.1984). Joint authorship is not a defense called out specifically in Rule 8(c); however, it is undoubtedly compelled under Rule 8's residuary clause for "any other matter constituting an avoidance or affirmative defense." Moreover, Rule 9(a) states as follows (emphasis ours):

> (a) **Capacity or Authority to Sue; Legal Existence.**
>
> (1) In General. Except when required to show that the court has jurisdiction, a pleading need not allege:
>
> (A) a party's capacity to sue or be sued;
>
> (B) a party's authority to sue or be sued in a representative capacity; or
>
> (C) the legal existence of an organized association of persons that is made a party.
>
> (2) <u>Raising Those Issues. To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge</u>.

Joint authorship is a frontal attack on capacity or authority to sue. In essence, the joint owner claims that the plaintiff, as a joint owner, lacks standing to sue the defending joint owner. Joint authorship is not averred by defendants, either in their answer or in their counterclaim. Accordingly, it should be deemed waived under well-settled law. See *Morrison v. Mahoney*, supra. Moreover, Rule 15(b) does not permit amendments to include issues which are only inferentially suggested by

incidental evidence in the record. *Campbell v. Board of Trustees of Leland Stanford Junior University,* 817 F.2d 499, 506 (9th Cir. 1987).

Should the Court choose to address the joint authorship defense on its merits, we contend that the Court did so at the close of session last Friday.

### A.    Joint Authorship Cannot Incorporate Pre-Existing Work Without A Writing

Defendants' assertion of a joint license is not supportable by law. They have offered not one case to support the proposition that a putative joint author becomes a joint author by contributing pre-existing, copyrightable work. And for good reason. There is no such case. That is because Defendants' joint authorship theory, if applied by the Court, would turn the implied license and derivative work doctrines upside down. More accurately, it would offend one of the most basic precepts of copyright law—the writing requirement. 17 U.S.C. § 204(a) provides that "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." The Ninth Circuit has summarized this point eloquently in *Konigsberg Intern. Inc. v. Rice,* 16 F.3d 355, 356-58 (9th Cir. 1994) (emphasis added):

> Under section 204(a), "[a] transfer of copyright ownership ... is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." In *Effects II*, we stated that the writing must ensure that the author "will not give away his copyright inadvertently" and "forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." 908 F.2d at 557. The writing should also serve as a guidepost for the parties to resolve their disputes: "Rather than look to the courts every time they disagree as to whether a particular use of the work violates their mutual understanding, parties need only look to the writing that sets out their respective rights." Id. To serve these functions, the writing in question must, at the very least, be executed more or less contemporaneously with the agreement and must be a product of the parties' negotiations.
>
> Although section 204 is often referred to as the "copyright statute of frauds," it actually differs materially from state statutes of frauds. While the latter may be satisfied by a writing not intended as a memorandum of contract, not communicated to the other party, and even made in pleadings or testimony years after the alleged agreement, see Restatement (Second) of Contracts § 133 cmts. b, d (1981), section 204 may not. State statutes of frauds serve a purely evidentiary function--to prevent enforcement through fraud or perjury of fictitious

agreements. *Id.* § 131 cmt. c. Thus, agreements subject to statutes of frauds may be perfectly valid, yet unenforceable without evidence of a writing.

By contrast, a transfer of copyright is simply "not valid" without a writing. 17 U.S.C. § 204(a). Section 204's writing requirement not only protects authors from fraudulent claims, but also "enhances predictability and certainty of ownership-'Congress's paramount goal' when it revised the Act in 1976." *Effects II*, 908 F.2d at 557; [other citations omitted].

\* \* \*

In *Effects II*, we rejected the argument that such "joint creative endeavors" can displace section 204's writing requirement. 908 F.2d at 556-57. Appellants, however, point to *Oddo v. Reis*, 743 F.2d 630, 632-33 (9th Cir.1984), for the proposition that joint venturers--who neither are co-authors nor have executed a written transfer-can still be co-owners. *Oddo* provides no support for this proposition. The parties there had formed a partnership for the very purpose of creating the book in question. In signing the written partnership agreement, the author transferred his copyright in the manuscript to the partnership because each partner-under state law-was co-owner of the partnership's assets. Id. at 632.

Accordingly, Defendants theory that a joint authorship can be created by *donation of pre-existing work* is untenable.

The Notes of Committee on the Judiciary, House Report No. 94-1476, removes all doubt about this (emphasis added):

> The definition of "joint works" <u>has prompted some concern lest it be construed as converting the authors of previously written works</u>, such as plays, novels, and music, <u>into coauthors of a motion picture in which their work is incorporated</u>. It is true that a motion picture would normally be a joint rather than a collective work with respect to those authors who actually work on the film, although their usual status as employees for hire would keep the question of coownership from coming up. On the other hand, although a novelist, playwright, or songwriter may write a work with the hope or expectation that it will be used in a motion picture, this is clearly a case of separate or independent authorship rather than one where the basic intention behind the writing of the work was for motion picture use. In this case, the motion picture is a derivative work within the definition of that term, and section 103 [section 103 of this title] <u>makes plain that copyright in a derivative work is independent of, and does not enlarge the scope of rights in, any preexisting material incorporated in it</u>. There is thus no need to spell this conclusion out in the definition of "joint work."

The definition of jointly authored works incorporates the foregoing concerns, upon a close examination. In *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir.2000), the panel set forth three criteria for determining whether a work is jointly authored under § 101. First, the court determines whether the "putative coauthors ma[de] objective manifestations of a shared intent to be coauthors." *Id*. A contract evidencing intent to be or not to be coauthors is dispositive. *Id*. Second, the court

-3-

PLAINTIFF'S BENCH BRIEF RE: JOINT AUTHORSHIP ISSUE

determines whether the alleged author superintended the work by exercising control. *Id*. Control will often be the most important factor. *Id*. Third, the court analyzes whether "the audience appeal of the work" can be attributed to both authors, and whether "the share of each in its success cannot be appraised." *Id*.

As to the first element, the manifestations of a shared intent to be coauthors, by definition, apply to the work when created, not to pre-existing work. As to the second, defendants exercised no control over the pre-existing work and, for that matter, there is no evidence that they exercised any control during Adler's employment. As to the third element, the code written by Adler while employed will not function independently from the pre-existing work (2.0.5a (siva)). The small portion of code written during employment consisted of revisions, bug fixes, and minor additional features. Standing alone, that code cannot operate anything. It requires the base code to be functional. Therefore, "the audience appeal of the work" could never reach the "new matter" added during Adler's employment, since its audience could make no functional use of it.

Respectfully submitted,

DATED: February 1, 2010           **MILSTONE, PETERSON & WATTS, LLP**
                                  *Attorneys at Law*


By:_____/s/ GLENN W. PETERSON_____
           GLENN W. PETERSON

Attorneys for Plaintiff/Counterdefendant
Dustin K. Adler

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

**MILLSTONE PETERSON & WATTS, LLP**
/s/ Glenn W. Peterson

-4-