John P. Costello, Esq. (California State Bar No. 161511)
Pamela W. Bertani, Esq. (California State Bar No. 182672)
**COSTELLO LAW CORPORATION**
331 J Street, Suite 200
Sacramento, California 95814
Telephone No.: (916) 441-2234
Fax No: (916) 441-4254

Glenn W. Peterson, Esq. (California State Bar No. 126173)
**MILLSTONE PETERSON & WATTS, LLP**
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
Telephone: (916) 780-8222
Fax No: (916) 780-8775

Attorneys for Plaintiff/Counterdefendant
Dustin K. Adler

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN K. ADLER, an individual,<br><br>    Plaintiff,<br>  vs.<br><br>RELYNET, INC., a California Corporation, MICHAEL DICARLO, an individual, INTERNET BRAND, INC., a Delaware corporation, INTERMEDIA OUTDOORS, INC., a Delaware corporation, VORTEX MEDIA GROUP, INC., a Delaware corporation, and DOES 1 through 50, inclusively,<br><br>    Defendants.<br><br>RELYNET, INC., a California Corporation, MICHAEL DICARLO, an individual, and DOES 1 through 50, inclusively,<br><br>    Counterclaimants,<br>  vs.<br><br>DUSTIN K. ADLER, an individual,<br><br>    Counterdefendant. | Case No. 2:08-CV-01333-JAM-EFB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT INTERMEDIA OUTDOORS, INC.'S MOTION FOR ATTORNEYS' FEES, SANCTIONS, AND COSTS**<br><br>Date:      March 3, 2010<br>Time:      9:30 a.m.<br>Courtroom: 6<br><br>Honorable John A. Mendez |

# TABLE OF CONTENTS

**PAGE NO.**

TABLE OF AUTHORITIES ...................................................................................................ii, iii

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 1

III. ARGUMENT ..................................................................................................................... 2

    A. Standard for Awarding Fees and Costs Under 17 U.S.C. §505 ................................ 2

    B. Plaintiff's Claims Were Neither Frivolous Nor Unreasonable.................................. 2

        1. Direct Infringement.......................................................................................... 3

        2. Defendant's Estoppel Defense. ........................................................................ 4

        3. Plaintiff's Direct Infringement Claims were Not Unreasonable and Frivolous in Light of His Own Actions. ......................................................... 6

            a. Plaintiff's Awareness of His Claims. ..................................................... 6

            b. *Ory v. Country Joe McDonald*, 2003 WL 22909286, is Not on Point. ....................................................................................................... 7

        4. Plaintiff's Claims for Secondary Infringement Did Not Completely Lack Evidentiary Support. ............................................................................... 7

        5. Summary. ......................................................................................................... 8

    C. Plaintiff's Claims Were Not Brought For An Improper Purpose ............................. 8

    D. An Award of Fees and Costs Will Not Advance The Goals of Deterrence and Compensation. ......................................................................................................... 9

        1. Plaintiff's Claims Against Intermedia Outdoors, Inc. Were Made In Good Faith And Based On Credible Evidence – Awarding Internet Brands Attorney's Fees Would Not And Cannot Further An Underlying Purpose Of The Copyright Act ..................................................... 10

    E. Defendant's Fees Are Unreasonable ....................................................................... 14

    F. Plaintiff's Counsel Did Not Violate 28 U.S.C. §1927 Because Plaintiff's Claims Were Not Frivolous. ................................................................................... 14

IV. CONCLUSION................................................................................................................ 16



# TABLE OF AUTHORITIES

**CASES**                                                                                                     **PAGE NO.**

*Baker v. Urban Outfitters, Inc.*,
  431 F. Supp.2d. 351 (S.D.N.Y. 2006) ................................................................................ 8, 9, 16

*Benavides v. Miami Atlanta Airfreight, Inc.*,
  612 F.Supp.2d 1236 (S.D.Fla.2008) ............................................................................................ 16

*Berkla v. Corel Corp.*,
  302 F.3d 909 (9th Cir. 2002) ................................................................................................ 12, 13

*Bibbero Systems, Inc. v. Colwell Systems, Inc.*,
  893 F.2d 1104 (9th Cir. 1990) .............................................................................................. 12, 13

*Blum v. Stenson*,
  465 U.S. 886 (1984) .......................................................................................................................... 14

*Boksa v. Keystone Chevrolet Co.*,
  553 F.Supp. 958 (N.D.Ill.1982) ...................................................................................................... 16

*Carmichael Lodge No. 2103 v. Leonard*,
  2009 WL 29855475, *14 (E.D. Cal, September 16, 2009) .......................................................... 10

*Christiansburg Garment Co. v. EEOC*,
  434 U.S. 412 (1978) .......................................................................................................................... 11

*Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.*,
  777 F.2d 485 (9th Cir. 1985) ........................................................................................................... 13

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ........................................................................................................... 11

*Estate of Blas v. Winkler*,
  792 F.2d 858 (9th Cir.1986) ............................................................................................................ 15

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir.1996) ......................................................................................................... 2, 10

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) .................................................................................................................. passim

*Hampton v. Parmount Pictures Corp.*,
  279 F.2d 100 (9th Cir. 1960) .................................................................................................... 10, 15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .......................................................................................................................... 14

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
  796 F.2d 1148 (9th Cir. 1986) ........................................................................................................ 13

*In re: Keegan Mgmt. Co., Securities Litigation*,
  78 F.3d 431 (9th Cir.1995) .............................................................................................................. 15

# TABLE OF AUTHORITIES
## (continued)

**CASES**                          **PAGE NO.**

*Jartech, Inc. v. Clancy*,
   666 F.2d 403 (9th Cir. 1982) *cert denied*, 459 U.S. 879 .............................................. 13

*Lieb v. Topstone Industries, Inc.*,
   788 F.2d 151 (3rd Cir. 1986) ..................................................................................... 11, 12

*Lifshitz v. Walter Drake & Sons, Inc.*,
   806 F.2d 1426 (9th Cir. 1986) ......................................................................................... 13

*New Alaska Dev. Corp. v. Guetschow*,
   869 F.2d 1298 (9th Cir.1989) .......................................................................................... 15

*Ory v. Country Joe McDonald*,
   2003 WL 22909286 ...................................................................................................... 6, 7

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ......................................................................................... 11

*Perfect 10, Inc. v. Visa Intern. Service Ass'n.*,
   494 F. 3d 788 (9th Cir. 2007) ........................................................................................... 8

*Van Halen Music v. Foos*,
   728 F.Supp. 1495 (D.Mont.1989) .................................................................................... 14

*Zuill v. Shanahan*,
   80 F.3d 1366 (9th Cir. 1996) ........................................................................................... 14

**STATUTES**

17 U.S.C. Section 106 .............................................................................................................. 4

17 U.S.C. Section 504 .............................................................................................................. 9

17 U.S.C. Section 504(c)(2) .................................................................................................... 11

17 U.S.C. Section 505 ....................................................................................................... passim

28 U.S.C. Section 192 .............................................................................................................. 1

28 U.S.C. Section 1927 ............................................................................................... 15, 16, 17

**OTHER AUTHORITIES**

4 Nimmer, Section 14.04[B][3] (Dec. 2000) ........................................................................... 11

**RULES**

Federal Rules of Civil Procedure, Rule 11 ............................................................................. 16

## I. INTRODUCTION

Plaintiff Dustin K. Adler's ("**Plaintiff**" or "**Adler**") action for infringement of his copyrighted software program ("**Zeroforum**") against multiple defendants was successful in some respects, and unsuccessful in others. With respect to Defendant Intermedia Outdoors, Inc. ("**Defendant**" or "**Intermedia**"), Plaintiff lost on summary judgment. The court ultimately found that Plaintiff should be estopped from asserting his rights against Defendant for direct copyright infringement and that at the summary judgment stage, there was not enough evidentiary support for Plaintiff's claims for secondary infringement. However, Plaintiff's claims were not so baseless or frivolous that Defendant should be awarded fees and costs under either 17 U.S.C. §505 or 28 U.S.C. §1927. Plaintiff had factual support for his claims of direct infringement as well as legitimate legal arguments against estoppel, which arguments were based upon facts. As concerns Plaintiff's secondary infringement claims, facts existed which created an inference of such infringement and had Plaintiff been able to gather additional evidence, he may have been able to further support his claims. Ultimately, Plaintiff's case against Defendant turned out not to be very strong, but it was not initiated or maintained frivolously or with the intent to harass or extort money from Defendant.

## II. FACTUAL BACKGROUND

In the summer of 2007, Plaintiff became aware that Defendant was using Plaintiff's Zeroforum software platform and predecessor source code without Plaintiff's authorization. (First Amended Complaint (FAC) ¶60.) In December of 2008, Plaintiff sent a cease and desist letter to Defendant informing it of his rights in the Zeroforum. (Robbins Declaration, ¶ 14, Index of Exhibits in Support of Intermedia Outdoors, Inc.'s Motion for Attorneys Fees and Costs Pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1927 ("Intermedia's Exhibits"), Ex. B.) This letter was ignored by Defendant necessitating that Defendant be named in this action. Plaintiff filed his FAC naming Defendant Intermedia in this action in February 2009. It was Plaintiff's contention that Defendant continued to infringe Plaintiff's copyrighted software after receiving the 2008 cease and desist letter until September 2009, at which time Defendant finally migrated to a different bulletin board software program. On November 18, 2009, the court granted Defendant's motion for summary

///

judgment on all claims against Defendant. (Court's Order Granting Summary Judgment, Docket No. 152, Intermedia's Exhibits, Ex. A.)

## III.  ARGUMENT

### A.  Standard for Awarding Fees and Costs Under 17 U.S.C. §505

17 U.S.C. §505 ("**Section 505**") provides that in an action under the Copyright Act, a court has the discretion to award reasonable attorneys' fees and costs to the prevailing party. An award of attorneys' fees to a prevailing party that furthers the underlying purposes of the Copyright Act rests in the sound discretion of the court. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir.1996). Some of the factors that a district court might consider are: "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, (1994). Ultimately, the question is whether a successful defense of the action furthered the purposes of the Copyright Act, not whether a fee award would do so. *Id.* at 527.

### B.  Plaintiff's Claims Were Neither Frivolous Nor Unreasonable

Contrary to Defendant's assertions, Plaintiff was not unreasonable in bringing his claims of copyright infringement. While Plaintiff was ultimately unsuccessful in his action against Defendant, it does not follow that his claims were frivolous or unreasonable.

Plaintiff's claims against Defendant were based upon Defendant's operating and administrating of the Intermedia forums at http://outdoorsbest.zeroforum.com. In so doing, Plaintiff contended that Defendant, or its agents, must by necessity have accessed and interacted with the administration functions of the ZeroForum software. Through such interaction, Defendant must have requested, via web browser, that an administration page be copied from the source servers at RelyNet, Inc. ("**RelyNet**"), over the internet, to Defendant's computers. This page was copied and stored in the computer's RAM and then subsequently copied to the local hard-disk cache. The administration pages that were reproduced, by action of Defendant or its agents, contained text and markup that were contained within the ZeroForum source code that is protected by copyright registrations owned by Plaintiff. (First Amended Complaint (FAC) ¶¶47, 50, 56.)  Therefore, by

result of the acts of Defendant and/or its agents, copyrighted material contained within the ZeroForum source code was reproduced on Defendant's and/or its agents' local computers. Hence, Defendant or its agents were alleged to have copied content of the copyright protected ZeroForum source code by accessing the administrative pages of the ZeroForum software. Ultimately, Plaintiff's claims against Defendant were factually and legally supportable.

### 1.     **Direct Infringement.**

When the administrative sections of the ZeroForum program were accessed by Defendant's personnel, the ZeroForum source code relating to these sections were also downloaded, and thereby copied to the Defendant's computers. This was confirmed in the deposition testimony of Mike DiCarlo, the current President of RelyNet  (DiCarlo Dep. at 99:6-25; 100:6-19, Index of Exhibits in Support of Dustin K. Adler's Opposition to Intermedia Outdoors Motion for Attorneys Fees and Costs,  Ex. D.) ("**Adler Exhibits**")  Mr. DiCarlo confirmed that multiple administrative pages, when downloaded by Defendant's administrative personnel, generated copies of multiple pages of source code. (DiCarlo Dep. at 100:20-106:10, Adler Exhibits, Ex. D.)

David Robbins, the Director of Digital Content for Defendant testified that he as well as others in the Intermedia camp had administrative access to RelyNet's servers.  (Robbins Dep. at 41:15-23, Adler Exhibits, Ex. A.)  Mr. Robbins also testified that employees of Intermedia whom he supervised accessed the administrative panel multiple times to execute typical administrative functions.  (Robbins Dep. 14:1-10; 42:23-43:8, Adler Exhibits, Ex. A.)  By Plaintiff's estimate, given the number of outdoor forums run by Intermedia, the total acts of copying by Defendant's administrative personnel numbered in the hundreds.  The facts supporting this estimate are as follows:

David Robbins stated in his deposition that Intermedia accessed the administrative pages of ZeroForum through the XML export function for each forum in the system multiple times. (Robbins Dep. 15:17-16:4, 17:17-21, 32:17-24, and 39:19-40:13, Adler Exhibits, Ex. A.)   The evidence showed that there were 80 forums associated with the Florida sportsman topic. *Id.* at 18:20-19:1. There were 52 remaining forums, which break down as follows: (1) twenty-six forums for Fly Fisherman. *Id.* at 19:20-22; (2) one forum for In-Fisherman. *Id.* at 19:24-20:1; (3) ten forums for

Shallow Water Angler. *Id.* at 20:2-4; (4) four forums for Shooting. *Id.* at 20:5-7; (5) three forums for Hunting. *Id.* at 20:8-10; (6) eight forums for North American Whitetail. *Id.* at 20:11-13.

The 80 forums associated with Florida Sportsman each had 4 exports (copies). *Id.* at 42:25-43:4. The remaining 52 forums each had 2 exports. *Id.* Plus there were an extra three exports done for testing. *Id.* This adds up to the following total number of copies of ZeroForum administrative page software code as follows: 80 x 4 = 320; 52 x 2 = 104; plus 3 = 427 total exports/copies**.** In light of the foregoing facts, Plaintiff contended that these 427 copies were significant and constituted a violation of this exclusive right to copy. 17 U.S.C. § 106.

### 2. Defendant's Estoppel Defense.

Plaintiff ultimately contended that he should not have been estopped to assert his copyright on the grounds that he did not "know the facts" nor did he intend that his conduct be acted upon. Plaintiff's contention had factual support. By its own admission, Defendant notes that prior to 2002, Primedia, Inc., Defendant's successor in interest, sought out Mike DiCarlo for purposes of having RelyNet, Inc. run Primedia's bulletin boards with ZeroForum software. (Wickstrom Declaration ¶¶ 3, 8, and 9, Intermedia's Exhibits, Ex. C.) At all times involving ownership of the ZeroForum software, Defendant dealt with Mike DiCarlo, who claimed that RelyNet owned the ZeroForum software. *Id*. at ¶ 9. By the time Primedia signed on as a RelyNet customer, RelyNet had "hundreds" of other clients, and by all accounts, Plaintiff only interacted with Primedia on a very cursory level on a few technical issues, none of which involved representations of software ownership in ZeroForum. (Adler Dep., at 223:13; 218:22-219:14, Intermedia's Exhibits, Ex. F.)

By the admission of Defendant's own personnel, all interaction between Primedia/Intermedia and RelyNet, Inc. regarding software ownership were filtered through Mike DiCarlo, and not Plaintiff. (Wickstrom Declaration ¶¶ 8, 9, 14, 15, Intermedia's Exhibits, Ex. C.) Also, at all times, Plaintiff does not recall informing Primedia/Intermedia that he had any ownership interest in RelyNet, nor does he recall Mike DiCarlo having made any representations on Plaintiff's behalf to Primedia/Intermedia regarding Plaintiff's ownership stake in RelyNet. (Adler Dep., at 219:10-18, Intermedia's Exhibits, Ex. F.)

/ / /

1   Defendant noted in its brief that the RelyNet website initially contained a copyright notice which stated, "© ZeroForum.com;" and which was later changed to read, "© RelyNet, Inc." (Adler Dep., at 233:9-19, Intermedia's Exhibits, Ex. F.)  Defendant cited these facts for the premise that Adler knew that RelyNet was holding itself out as the copyright owner in ZeroForum, acquiesced to these facts, and did nothing to change it.  However, facts existed which supported the contention that Plaintiff was under the mistaken impression that the "© ZeroForum.com" notice was actually indicating himself, Dustin K. Adler, as the owner of ZeroForum, which was his intent. (Adler Dep., at 90:18-20, Intermedia's Exhibits, Ex. F.)  Plaintiff's knowledge of the form and legalities of a proper copyright notice were relatively uniformed during his years at RelyNet. (Adler Dep., at 230:8-11, Intermedia's Exhibits, Ex. F.)  Facts in the record also supported Plaintiff's honest belief that he thought "© ZeroForum.com" was a reference to himself.  Namely, Plaintiff thought that since he owned the domain name "ZeroForum.com," that modifying the domain name with a copyright notice would be an indicator of his ownership in the ZeroForum software.  Indeed Plaintiff's domain name registration records indicate that he was the original registrant and owner of the ZeroForum.com domain name; these records indicating Plaintiff's own home address information and not RelyNet, Inc's. (Bates Nos. 2638-41; 2644, 2654, Adler Exhibits, Ex. A.)  Furthermore, when the copyright notice on RelyNet, Inc.'s web pages changed from "© ZeroForum.com" to "© RelyNet, Inc." this change was affected by Mike DiCarlo's action and not Plaintiff's. (Adler Dep., at 230:16-231:4, Intermedia's Exhibits, Ex. F.)  Plaintiff cited the foregoing facts for the proposition that he never attempted or intended to hold out that RelyNet, Inc. was the owner of the ZeroForum software copyright.  Instead, even though his "© ZeroForum.com" was improper, all indications were that Plaintiff attempted to represent himself as the owner of the ZeroForum software copyrights.  Any representations that RelyNet was the copyright owner were controlled and affected by Mike DiCarlo.  As such, Plaintiff justifiably contended that he should not have been estopped from asserting his claims against Defendant.

/ / /

/ / /

/ / /

**3.   Plaintiff's Direct Infringement Claims were Not Unreasonable and Frivolous in Light of His Own Actions.**

Defendant cites *Ory v. Country Joe McDonald*, 2003 WL 22909286, for the proposition that Plaintiff's claim of infringement was unreasonable because such claim was brought long after Plaintiff became aware of the alleged infringement. Plaintiff takes issue with Defendant's assertion for two reasons: (1) Plaintiff became aware of the alleged infringement much later then claimed by Defendant; and (2) the *Ory* case is distinguishable because the length of the delay in that case (decades) was considerably longer than any delay involved in the present case.

**a.   Plaintiff's Awareness of His Claims.**

Defendant asserts that while Plaintiff worked at RelyNet he actively misled Defendant into believing that RelyNet was the rightful owner of the Zeroforum Software and that Plaintiff waited seven (7) years to assert his rights against Defendant. As set forth above, Plaintiff cited multiple facts which support the conclusion that Plaintiff did not actively mislead Defendant as to the ownership of Zeroforum. From Plaintiff's perspective, the facts supported his intention to assert ownership in the Zeroforum software. Plaintiff did not himself actively represent RelyNet as the owner of Zeroforum during his time at RelyNet. Additionally, the facts show that Adler was anything but silent in asserting his copyright ownership, as he attempted to get RelyNet to recognize his rights in 2005, when he sent his first cease and desist letter to RelyNet, which RelyNet never heeded. (Letter from Adler's counsel, John P. Costello to RelyNet, Intermedia's Exhibits, Ex. I.) At such time, Plaintiff was unaware that Defendant had purchased Primedia, Inc. and he was also unaware of the extent to which Defendant was violating his copyrights until around 2007. (FAC ¶¶ 57, 60, Intermedia's Exhibits, Ex. D.) When Plaintiff found out about Defendant's violations, he sent them a cease and desist letter in 2008, which was ignored by Defendant, necessitating that Plaintiff name them in this lawsuit in 2009. (Robbins Declaration, ¶ 14, Intermedia's Exhibits, Ex. B.) Based upon the foregoing, Plaintiff contends that there were facts in the record which supported a reasonable argument that he should not have been estopped from asserting his copyright and that he did not actively mislead Defendant into believing that RelyNet

///

was the owner of Zeroforum software. Moreover, Plaintiff asserted his rights within a reasonable time period after learning about the extent of Defendant's alleged infringement in 2007.

### b. *Ory v. Country Joe McDonald*, 2003 WL 22909286, is Not on Point.

*Ory v. Country Joe McDonald,* 2003 WL 22909286 is distinguishable from the present case. The claim for infringement in that case was based upon a song written by the plaintiff's father in the 1920's and copyrighted in 1926. *Id*. at 1. The claim, which was brought in 2001, stated that a 1965 song infringed the Plaintiff's father's song copyrighted way back in 1926. *Id*. The court found that the decades long delay weighed heavily toward a grant of attorneys fees because the delay made such claim unreasonable. *Id*. at 12. In the present case, even if one uses the year in which Adler was locked out of RelyNet (August 2005), the total time Plaintiff waited to assert his rights was only three (3) years. However, the more appropriate date from which to start the clock is the date upon which Plaintiff learned of the extent of Defendant's alleged infringement. Based upon that timeframe (summer 2007) Plaintiff waited only a little over one (1) year to assert his rights via a cease and desist letter, and less than two (2) years to file his complaint. In any event, it cannot be said that Plaintiff unreasonably delayed asserting his rights in this action in the same fashion as the plaintiff in *Ory.*

### 4. Plaintiff's Claims for Secondary Infringement Did Not Completely Lack Evidentiary Support.

Plaintiff's claims for secondary copyright infringement were based upon Plaintiff's contention that Defendant directly infringed Plaintiff's copyright and the following factors: (1) numerous non-employee moderators who monitored Defendant's various forums on a volunteer basis, with the encouragement of Defendant; (2) some of these moderators were "super-moderators" which included elevation of the moderator's web page privileges to higher status, raising the question of whether these super-moderators had been given elevated administrative access and thereby caused direct copies of ZeroForum software to be made; and (3) according to Defendant, these moderators were the "life blood" of the forums which raised questions as to what their involvement with ZeroForum was and how much administrative access Defendant gave to these third parties. (Robbins Dep. At 42:3-15, 56:7-11, Plaintiff's Exhibits, Ex. B.) Based upon the foregoing, Plaintiff legitimately

contended that significant issues remained regarding contributory and vicarious copyright infringement liability as to Defendant. It was Plaintiff's belief that when Defendant obtained knowledge of the alleged infringement, Defendant had knowledge of the non-employee moderators corresponding infringement, and that Defendant contributed to such infringement See *Perfect 10, Inc. v. Visa Intern. Service Ass'n.*, 494 F. 3d 788, 795 (9th Cir. 2007). Additionally, Plaintiff intended to show that Defendant had the right and ability to supervise such infringing conduct and maintained a direct financial interest in such infringing activity. See *Perfect 10, Inc. v. Visa Intern. Service Ass'n.*, supra 494 F. 3d at p. 802. This is the same basis for which Plaintiff successfully established liability against defendant Michael DiCarlo.

### 5. Summary.

Plaintiff contends that there were facts in the record which supported both his claim for direct infringement and his arguments against Defendant's estoppel defense. As concerns Plaintiff's claims for secondary infringement, while they may have lacked direct evidence at the summary judgment stage, such claims were not completely baseless. Additionally, Plaintiff's delay in asserting his rights was not so egregious and to make the claim de facto unreasonable. Ultimately, Plaintiff contends that the frivolousness and reasonableness factors of Section 505 weigh against an award of fees and costs, or such factors should be seen as neutral at best.

### C. Plaintiff's Claims Were Not Brought For An Improper Purpose

Defendant argues that Plaintiff sued Defendant solely for the purpose of extracting money from them such that the action was brought for an improper purpose. In *Baker v. Urban Outfitters, Inc*. (cited by Defendant), the district court granted the defendants motion for attorneys' fees where defendants inadvertently used a single photograph to which the plaintiff claimed copyright ownership. *Baker v. Urban Outfitters, Inc*. 431 F. Supp.2d. 351 (S.D.N.Y. 2006). The plaintiff's attorney in *Baker* disregarded reasonable settlement offers out of hand, claimed damages of more that a quarter million dollars (facts suggested maybe $4,000 in actual damages), there were false allegations in the complaint and there was evidence that the claim was filed and maintained to extort a large settlement and to garner publicity for the plaintiff's agent and attorneys. *Id*. at 357-358.

///

The same cannot be said about Plaintiff in this case. While Plaintiff may have only pursued infringers he considered to be "high profile", it does not follow that such a selection implies an improper motive. In every lawsuit, consideration must be given to the potential defendant's ability to pay a judgment which might be entered against them. If a defendant is insolvent, for instance, it likely does not make financial sense to commence a lawsuit against them based upon their inability to satisfy a judgment. The instant action was commenced against Defendant on the grounds that Plaintiff believed that Defendant infringed his copyright protected software. Plaintiff's election to pursue Defendant because of an additional factor (the perceived ability to satisfy a potential judgment) does not equate to an improper motivation. Instead, it is quite reasonable from a plaintiff's perspective to expend costs in litigation against defendants with an ability to pay a judgment. Ultimately, there is simply no direct evidence that Plaintiff attempted to extort a large settlement out of Defendant or that Plaintiff's motives were otherwise improper. Similarly, unlike *Baker*, Plaintiff was never offered a settlement proposal in this case. Defendant's assertion that Plaintiff's motives were improper is unfounded. Additionally, the fact that Plaintiff had not yet set forth an actual damages calculation is irrelevant to Plaintiff's motives. Plaintiff legitimately contended that Defendant infringed his copyrighted software and had he prevailed, he would have been entitled to either actual or statutory damages under the Copyright Act. 17 U.S.C. §504. In light of the forgoing, the motivation factor under Section 505 does not weigh in favor of an award of fees and costs.

**D.  An Award of Fees and Costs Will Not Advance The Goals of Deterrence and Compensation.**

In considering an award for attorneys' fees and costs, a court may consider "the need, in particular circumstances, to advance considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.*, supra, 510 U.S. at p. 534 fn.4. "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id*. at 527. "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly

PLAINTIFF'S OPP TO DEF INTERMEDIA OUTDOORS MTN FOR ATTYS' FEES, SANCTIONS, AND COSTS

important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* Ultimately, the question is whether a successful defense of the action furthered the purposes of the Copyright Act, not whether a fee award would do so. *Id*. at 527

In the present case, Defendant has not demonstrated that there are particular circumstances in this case which require this factor to be considered. More importantly, it is not at all clear that Defendants estoppel defense against Plaintiff's infringement claims more clearly demarcated the boundaries of copyright law liability. An estoppel defense requires a showing that "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Hampton v. Parmount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). Estoppel in the copyright context does not differ from the general law of estoppel. *Carmichael Lodge No. 2103 v. Leonard*, 2009 WL 29855475, *14 (E.D. Cal, September 16, 2009). Intermedia's defense of this action was not novel and did not more clearly mark the boundaries of copyright liability. Instead, Defendant simply prevailed upon a showing that each of the four (4) factors were present in this case. Ultimately, Plaintiff contends that this Section 505 factor is neutral in the analysis.

> **1.  Plaintiff's Claims Against Intermedia Outdoors, Inc. Were Made In Good Faith And Based On Credible Evidence – Awarding Internet Brands Attorney's Fees Would Not And Cannot Further An Underlying Purpose Of The Copyright Act**

"An award of attorney's fees to a prevailing defendant that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of the district courts …" *Fantasy, Inc. v. Fogerty* (9th Cir. 1996). A "majority of lower courts [exercise] their discretion in awarding attorney's fees to prevailing defendants based on a finding of frivolousness or bad faith" although not all courts have expressly described the test in those terms. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), 531. "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.

There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised" in the court's evaluation regarding attorney's fees awards. *Fogerty v. Fantasy, Inc.,* supra, 510 U.S. 517 at 534.

One of the issues properly considered by the court in determining whether to award attorney fees is whether a defendant's infringement was willful. *Danjaq LLC v. Sony Corp.* (9th Cir. 2001) (citing 17 U.S.C. § 504(c)(2) (providing for enhanced statutory damages where the "infringement was committed willfully"). The term "willful" refers to conduct that occurs "with knowledge that the defendant's conduct constitutes copyright infringement.") *See also* 4 Nimmer, § 14.04[B][3], at 14-53 (Dec. 2000) (defining willful infringement). As plaintiffs and defendants are to be "treated alike" regarding the imposition of attorney's fees awards, the court would properly consider a state of mind equivalent to "willfulness" in determining whether a plaintiff should be held liable for a prevailing defendant's attorney's fees. Such an analysis is not mandated by *Fogerty*, but nonetheless comports with on-point Ninth Circuit authority, which considers whether a plaintiff brought a case in bad faith, under unreasonable circumstances or based on frivolous allegations, in determining the propriety of awarding attorney's fees to a prevailing defendant. Indeed, to guide district court's discretion in awarding attorney's fees, the Fogerty Court expressly endorsed consideration of similar criteria via the Third Circuit's *Lieb* factors (comprising frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence) in considering attorney's fees awards. *Fogerty*, 510 U.S. at 534 n.19 (citing *Lieb v. Topstone Industries, Inc.* (3rd Cir. 1986) 788 F.2d 151, 156.)

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been [a victim], no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 421-422. *See, e.g., Perfect 10, Inc. v. CCBill LLC,* (9th Cir. 2007) 488 F.3d 1102, 1120 (denying defendant's request for attorney's fees -

the district court made clear in its order denying fees that it had weighed each of the *Lieb* factors and validly exercised its discretion to deny defendants' fees.  Defendants argued that the district judge inadequately considered these factors, that Perfect 10's litigation positions were frivolous and meritless, and that Perfect 10 is a serial filer of nuisance copyright claims.  However, there is ample support for the district court's finding that Perfect 10's legal claims are not frivolous or objectively unreasonable. The district court reasonably found the evidence regarding Perfect 10's motivation to be equivocal, and did not abuse its discretion in weighing the interests of compensation and deterrence and denying costs and attorney's fees to defendants); *Berkla v. Corel Corp.* (9th Cir. 2002) 302 F.3d 909, 922-923 (this Court has held that "while courts may take the *Lieb* factors into account, they are nonexclusive.  Even so, courts may not rely on the *Lieb* factors if they are not "faithful to the purposes of the Copyright Act."  Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion.  Corel argued that its successful defense of Berkla's infringement claims on the ground that Berkla's images contained no protectable expression furthered a primary objective of the Copyright Act - to "promote the Progress of Science and useful Arts" by "encouraging others to build freely upon the ideas and information conveyed by a work."  It contended that its defense of this suit fostered the important concept of distinguishing unprotectable ideas from protectable expression.  "We find this argument unpersuasive and agree with the district court that Corel's behavior in this case did not advance the purposes of the Copyright Act.  In denying fees, the district court found that Corel's use of Berkla's nozzles to model its own Photo Paint images, while not technically violating the virtual identity standard of copyright infringement, nevertheless constituted a highly questionable business practice.  The district court emphasized: 'Most important …is the fact that the jury found Corel had acted improperly in utilizing Berkla's databases for modeling of its own …. It would be inconsistent with the Copyright Act's purposes to endorse Corel's improper appropriation of Berkla's product by awarding fees"); *Bibbero Systems, Inc. v. Colwell Systems, Inc.* (9th Cir. 1990) 893 F.2d 1104, 1108-1109 (in order to receive attorney's fees on a copyright infringement claim, a prevailing defendant must show that the action was frivolous or brought in bad faith – and even where plaintiff's claimed copyright was deemed invalid, plaintiff's copyright claim was nonetheless colarble); (citing *Cooling Systems and Flexibles,*

PLAINTIFF'S OPP TO DEF INTERMEDIA OUTDOORS MTN FOR ATTYS' FEES, SANCTIONS, AND COSTS

*Inc. v. Stuart Radiator, Inc.* (9th Cir. 1985) 777 F.2d 485, 493-494; *Jartech, Inc. v. Clancy* (9th Cir. 1982) 666 F.2d 403, 407, *cert denied*, 459 U.S. 879 (an award of attorney's fees to a defendant under section 505 may be predicated on a finding of bad faith or frivolity.) *See, e.g.*, *Lifshitz v. Walter Drake & Sons, Inc.* (9th Cir. 1986) 806 F.2d 1426, 143; *Cooling Systems*, 777 F.2d at 493 (finding that '[w]hen attorney's fees are awarded to a prevailing defendant, the award represents a penalty for the institution of a frivolous or bad faith suit"; *Jartech, Inc. v. Clancy* (9th Cir. 1982) 666 F.2d 403, 407  cert. denied, 459 U.S. 826, 74 L. Ed. 2d 62, 103 S. Ct. 58, 103 S. Ct. 58 (1982); *Hustler Magazine, Inc. v. Moral Majority, Inc.* (9th Cir. 1986) 796 F.2d 1148, 1156 (holding that "[a]ttorneys' fees to prevailing defendants [should] be awarded circumspectly to avoid chilling a copyright holder's incentive to sue on 'colorable' claims."

Moreover, Courts in this Circuit have refused to find "frivolousness" under much more questionable circumstances – even when a plaintiff's copyrighted work that forms the bases of plaintiff's allegations is ultimately found by be invalid. In other words, even where the allegedly infringed work forming the basis of a lawsuit is ultimately deemed uncopyrightable – the Ninth Circuit has refused to find that the corresponding action was "frivolous." *Accord, Bibbero v. Colwell,* supra 893 F.2d 1104 1109 (denying defendant's request for attorney's fees even where plaintiff's copyrights were ultimately deemed invalid and concluding that "[t]he fact that a court determines that a claimed copyright is invalid does not mean that the plaintiff has not presented a colorable claim.")

Plaintiff's suit was based on credible evidence and presented a tenable claim for copyright infringement. Plaintiff's objective in pursing damages from Intermedia Outdoors for commercially using ZeroForum without his consent cannot be deemed frivolous, unreasonable or otherwise in bad faith – Plaintiff was simply pursuing his rights under the Copyright Act – and diligent enforcement of copyrights is one of the primary objectives of the copyright laws in this County. *Accord Zuill v. Shanahan, 80 F.3d 1366, 1370 (9th Cir. Cal. 1996)* (because copyright ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible" (citing *Fogerty v. Fantasy, Inc*., 510 U.S. at 527 ("[t]he primary objective of copyright is not to reward the labor of authors, but to

promote the Progress of Science and useful Arts. To this end, copyright assures authors the right to their original expression ….")

### E. Defendant's Fees Are Unreasonable

The determination of the amount of reasonable attorneys fees to be awarded is accomplished by determining the "loadstar" factor, which is the number of hours reasonably expanded on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Factors to consider in the initial lodestar calculation are the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained, and the superior performance of counsel. *Blum v. Stenson,* 465 U.S. 886, 898-900, (1984).

In *Van Halen Music v. Foos*, 728 F.Supp. 1495, 1498 (D.Mont.1989), the court applied the foregoing analysis. It found that based upon the attorney's experience in copyright litigation, the number of hours reasonably expended should be decreased from the 44 claimed and should be reduced to a total of 23 hours. Plaintiff contends that if fees were to be awarded in the instant case, a similar reduction would be appropriate. Defendant's counsel is experienced in the area of copyright litigation and the issues in this case as pertained to Defendant were not highly complex. Plaintiff does not take issue with the rates aspect of the "lodestar" amount set forth by Defendant. However, Plaintiff contends that total hours billed by Defendant's counsel (500+) was excessive and unreasonable. If fees were to be awarded, Plaintiff submits that the court should make a reduction to Defendant's fees to reflect a more reasonable number of hours which should have been expended in the defense of this action.

### F. Plaintiff's Counsel Did Not Violate 28 U.S.C. §1927 Because Plaintiff's Claims Were Not Frivolous.

28 U.S.C. §1927 ("**Section 1927**") provides that: "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 sanctions "must be supported by a finding of subjective bad faith." *In re: Keegan Mgmt. Co., Securities Litigation*, 78 F.3d 431, 436 (9th Cir.1995) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir.1989)). "Bad faith is present when an attorney

knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id*. (quoting *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir.1986)). For sanctions to apply under Section 1927, "if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." *Id.* A filing is frivolous if it "is both baseless and made without a reasonable and competent inquiry." *Id.* at 434.

As set forth more fully herein above, Plaintiff's claims for copyright infringement against Defendant were not baseless or frivolous (nor is there any evidence that they were pursued with the intent to harass). Plaintiff's claims were based upon competent evidence that Defendant's personnel made hundreds of copies of Zeroforum source code by accessing administrative sections of the Zeroforum program and that such copies were fixed in a tangible medium (hard drives) which was sufficiently permanent to constitute an infringing copy. (DiCarlo Dep. at 99:6-25; 100: 6-19, Adler Exhibits, Ex. D; Robbins Dep. 15:17-16:4, 17:17-21, 32:17-24, and 39:19-40:13, Adler Exhibits, Ex. B.) Plaintiff took the position that this was infringement which was neither de minimus nor a fair use. With respect to estoppel, Plaintiff espoused nonfrivolous arguments that he should not have been estopped from asserting a claim for infringement. Significantly, Plaintiff successfully prevailed against RelyNet and Michael DiCarlo's estoppel defense at trial. Plaintiff set forth facts supporting his argument that he was not aware of the true facts and that he lacked the requisite intent necessary to create estoppel. See *Hampton v. Paramount Pictures Corp.*, supra, 279 F.2d at 104. Ultimately, while Plaintiff's arguments against Defendant's estoppel defense may have been weak, Plaintiff contends that at least a minimal question of legal interpretation was raised such that Plaintiff's claim for infringement cannot be said to be frivolous. See *Boksa v. Keystone Chevrolet Co*., 553 F.Supp. 958 (N.D.Ill.1982), [Buyers' legal position on their motion for summary judgment in an action under Truth in Lending Act, section 1601 et seq., of Title 15, although weak, was not so frivolous as to call for taxing their lawyer with fees where there was at least a minimal question of contractual and legal interpretation raised]; See also *Benavides v. Miami Atlanta Airfreight, Inc.,* 612 F.Supp.2d 1236 (S.D.Fla.2008) [Conduct of former employee's attorney in bringing and maintaining employee's Fair Labor Standards Act (FLSA) action against employer was not so egregious that it was tantamount to bad faith, precluding sanctions against attorney for excessive costs (under Federal Rules of Civil

Procedure, Rule 11); although weak, FLSA argument was not frivolous, and case actually proceeded expeditiously to summary judgment and was not vexatious or oppressive].

Finally, Plaintiff's counsel's prosecution of this action against Defendant is unquestionably distinguishable from the lawyer sanctioned in *Baker v. Urban Outfitters, Inc.*, *supra*, 431 F. Supp.2d. 351. In that case there was evidence that the lawyer deliberately sought to extort a large settlement from the defendant which was not supported by the actual damage calculation, that the lawyer dismissed any reasonable settlement offers out of hand and that the suit was brought in part for the purpose of gaining publicity for the attorney. *Id*. at 357-358. The same cannot be said for Plaintiff's counsel in this case. Plaintiff's counsel's arguments, while not successful, were not baseless and there is no evidence that Plaintiff's counsel acted unreasonably in attempting to resolve this dispute or prosecuted the claim to extort money or garner publicity.

For the foregoing reasons, Plaintiff respectfully requests that the court deny Defendant's request for an award of sanctions under Section 1927.

## IV.  CONCLUSION

Plaintiff's action against Defendant was ultimately unsuccessful. However, Plaintiff contends that his claims were not frivolous, baseless, unreasonable or improper. For the reasons stated herein, Plaintiff respectfully requests that the court deny Defendant's motion for fees and costs under Section 505 and Section 1927 in its entirety.

**COSTELLO LAW CORPORATION**
*-and-*

DATED: February 17, 2010   **MILLSTONE PETERSON & WATTS, LLP**
*Attorneys at Law*

By:     /s/ GLENN W. PETERSON
              GLENN W. PETERSON

Attorneys for Plaintiff Dustin Adler

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

**MILLSTONE PETERSON & WATTS, LLP**
*Attorneys at Law*
/s/ GLENN W. PETERSON